SAMUEL MELLITZ *vs.* THE SUNFIELD COMPANY.

Third Judicial District, Bridgeport, April Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

Restrictions imposed in a deed of a tract of land which is intended for division into lots are for the common benefit of all subsequent

Mellitz *v.* Sunfield Co.

lot owners, each one of whom has a right or interest in the restrictions in the nature of an easement, which he may enforce in equity against any of the others.

As a general rule, however, a prior purchaser of a lot in such a tract cannot enforce new or additional restrictions contained in a later deed to a subsequent purchaser of another lot, since there is no privity between prior and subsequent purchasers; but this rule is subject to exceptions as, for example, where the deed to the prior purchaser expressly gives him the right to enforce such restrictions as may be imposed in deeds to subsequent grantees, or where such a right may be implied from the fact that all the conveyances are made as parts of a uniform building scheme.

Merchandise may be defined as any article of traffic customarily bought and sold for profit; and, by common understanding arising out of the universal use of the automobile, the term "ordinary merchandise" embraces such articles as gasoline, oil and grease.

The heirs of B conveyed to L a large tract of land, intended for division into lots, and the deed contained the following restrictions, among others: "no building shall be erected upon the corner of Ellsworth Street and Fairfield Avenue to be occupied for any other purpose except dwellings" and "no building shall be erected on the balance of the Fairfield Avenue frontage to be occupied for any other purpose except stores and dwellings, said stores to be used for the sale of ordinary merchandise." After the plaintiff had purchased one of the lots, L conveyed to the defendant, subject to certain additional restrictions, the lot at the corner of Fairfield Avenue and Ellsworth Street and two adjoining lots fronting upon Fairfield Avenue. Upon these two adjoining lots, the defendant conducted a store and filling station for the sale of automobile parts, gasoline, oil and grease, and, in in connection therewith, constructed upon the corner lot a driveway for the use of its customers in passing to and from its place of business. *Held:*

1. That the plaintiff had no right to enforce the additional restrictions contained in the deed from L to the defendant.

2. That the restrictions contained in the original deed from the heirs of B to L, which were enforceable by the plaintiff against the defendant, disclosed an intent to restrict the entire tract, except certain of the lots on Fairfield Avenue, to residential purposes.

3. That the defendant's driveway across the corner lot, being a valuable and integral part of its business, violated the restriction that this lot should not be used "for any other purpose except dwellings."

4. That the business, conducted on the adjoining lots, of selling gasoline, oil and grease by means of underground tanks, pumps,

and the other usual equipment of a filling station, constituted "the sale of ordinary merchandise," and did not infringe the restrictions applicable to these lots.

Argued April 17th—decided July 30th, 1925.

SUIT for an injunction to restrain the erection by the defendant of a gasoline filling station alleged to be in violation of certain restrictions upon the use of its land, brought to the Superior Court in Fairfield County and tried to the court, *Banks, J.;* judgment for the defendant, and appeal by the plaintiff. *Error in part.*

The heirs of Bartram in 1915 conveyed to Linsky certain property and in the deeds of conveyance inserted restrictive covenants as follows:

"No building shall be erected in said premises, with the exception of lots fronting on Fairfield Avenue, to be used for any other purpose except dwellings or to be occupied by more than two families.

"No building shall be erected upon the corner of Ellsworth Street and Fairfield Avenue to be occupied for any other purpose except dwellings or to be occupied by more than two families, said corner lot to consist of approximately 130 feet frontage on Fairfield Avenue.

"No building shall be erected on the balance of the Fairfield Avenue frontage to be occupied for any other purpose except stores and dwellings, said stores to be used for the sale of ordinary merchandise; said buildings on Fairfield Avenue frontage shall not contain more than one family, besides the store.

"Said restrictions shall be covenants running with the land and against the land hereby conveyed and shall be enforceable at law and equity by the grantor herein named or by the owner at any time of any portion of said premises."

Linsky caused to be recorded in the town clerk's

office of Bridgeport, a blue-print plan of this tract sub-
dividing it into forty-three building lots, of which thir-
teen front on Fairfield Avenue and thirty on Ellsworth
Street, and two other streets are cut through the tract.
Linsky or his successor in title conveyed to plaintiff
on August 15th, 1919, lot number eleven on this plan
subject to the same restrictions, who erected thereon
a $20,000 house, the rental value of which is $200 a
month. The plaintiff purchased this lot and erected
his dwelling relying on these restrictions and cove-
nants, and in the belief that this tract would be free
from buildings and businesses other than as permitted
by these restrictions.

On November 19th, 1919, Linsky, the common gran-
tor of plaintiff and defendant, conveyed lot number one
on this plan to defendant subject to certain restric-
tions. Lot one is located on the southwesterly corner
of Fairfield Avenue and Ellsworth Street and has a
frontage of one hundred and thirty feet on Fairfield
Avenue and one hundred and forty-four feet on Ells-
worth Street. On September 12th, 1923, Linsky con-
veyed to defendant lots numbers two and three on
this plan, subject to certain restrictions. The restric-
tions in each of these conveyances are of a more ex-
tended character than are contained in the deed from
the Bartram heirs to Linsky. Lots two and three ex-
tend one hundred feet on Fairfield Avenue.

When this action was begun defendant had com-
menced to build and has since completed a brick and
tile building on lot two, which fronts on Fairfield Ave-
nue, and a cement driveway on lot three. This build-
ing is a store used for selling automobile accessories
and supplies, and also gasoline, oil and grease. On
lots two and three defendant has also constructed and
maintains two underground gasoline tanks of twenty-
two hundred gallons capacity each, seven gasoline

pumps, and a number of air, water and oil pumps. Lots two and three are covered with a cement walk used for driveway purposes. There is a crushed stone driveway upon lot one which is used in connection with the business conducted by defendant upon lots two and three. No building or other structure has been erected on lot one. The locality surrounding this tract is not exclusively residential, and there are in the immediate neighborhood a number of automobile supply houses and filling stations. Plaintiff's property is of less value as a residence property because of the existence of various places of business in the neighborhood, but the court is unable to find how much its value was affected by the structures erected by defendant upon lots two and three. Defendant's lots are located four hundred feet east of plaintiff's dwelling and the land between is vacant except for two large billboards. Directly opposite plaintiff's dwelling house is located a large garage erected in 1916, in which at one time plaintiff had a forty per cent stock interest. This action was begun one week after the foundations of defendant's gas station had been completed, and a temporary injunction was prayed for, but this was subsequently denied and defendant completed its brick and tile building on lot two and a cement driveway on lot three at an expenditure of upward of $13,000, and has since carried on the business of selling automobile accessories and gasoline, oil and grease in this store and on lots two and three.

*Henry E. Shannon,* with whom was *Charles Weingarten,* for the appellant (plaintiff).

*Joseph G. Shapiro,* with whom was *Harry Allison Goldstein,* and, on the brief, *Charles S. Brody,* for the appellee (defendant).

Mellitz *v.* Sunfield Co.

WHEELER, C. J. The restrictions imposed in the deed from the Bartram heirs to Linsky were for the common benefit of all subsequent lot owners in the tract conveyed. The restrictions create a right or interest in them in the nature of an easement which will be enforced in equity against the grantee of one of the other lots. *Baker* v. *Lunde,* 96 Conn. 530, 537, 114 Atl. 673; *Lacentra* v. *Valeri,* 244 Mass. 404, 138 N. E. 388; *Evans* v. *Foss,* 194 Mass. 513, 80 N. E. 587; *Stewart* v. *Finkelstone,* 206 Mass. 29, 34, 92 N. E. 37; *Halle* v. *Newbold,* 69 Md. 265, 270, 14 Atl. 662; *Clark* v. *Martin,* 49 Pa. St. 289; *Eckhart* v. *Irons,* 128 Ill. 568, 20 N. E. 687; 13 Cyc. 714; *Chapman* v. *Gordon,* 29 Ga. 250, 254; *Columbia College* v. *Lynch,* 70 N. Y. 440; *Greene* v. *Creighton,* 7 R. I. 1; *Allen* v. *Detroit,* 167 Mich. 464, 133 N. W. 317; note, 21 A. L. R. 1324. The plaintiff was therefore entitled to his action in equity against the grantee of any of the lots comprising the tract conveyed to Linsky for his violation of the restriction subject to which the tract was conveyed. The right of the plaintiff as a prior purchaser to the defendant from the original owner to enforce the restrictions in the deed from the original owner of this tract does not give him the right to enforce other and different restrictions contained in a subsequent deed of any of the lots of the tract. There is no privity between the prior and subsequent purchaser. *Doerr* v. *Cobb,* 146 Mo. App. 342, 123 S. W. 547; *Mulligan* v. *Jordan,* 50 N. J. Eq. 363, 24 Atl. 543; *Roberts* v. *Scull,* 58 N. J. Eq. 396, 401, 43 Atl. 583; *Summers* v. *Beeler,* 90 Md. 474, 45 Atl. 19; note, 33 A. L. R. 676. Instances of exceptions to this rule would occur where the stipulations in the prior deed gave to the grantee his right to enforce restrictions against grantees of subsequent lots in the same tract, or where such a right might be implied from the conveyances when

made as parts of a uniform building scheme. Other exceptions to the application of this rule may undoubtedly arise. *Milligan* v. *Balson,* 214 Mo. App. 627, 264 S. W. 73.

The extension of the restrictions in the conveyances to the defendant over those in the conveyance by the Bartram heirs to Linsky cannot be enforced in this action by the plaintiff, since as a prior purchaser he has no right or interest in enforcing these restrictions. Following these restrictions is the provision: "Said restrictions shall be covenants running with and against the land hereby conveyed and shall be enforceable at law and equity by the grantor herein named or by the owner at any time of any portion of said premises." So far as the record discloses no one can enforce them save Linsky, the grantor of defendant.

Plaintiff's right to enforce this action is then dependent upon the construction placed upon the restrictions in the conveyance from the Bartram heirs to Linsky. We take up first lot one on the corner of Fairfield Avenue and Ellsworth Street, conveyed by Linsky to defendant in November, 1919. The restriction in the deed to Linsky limits the building to be erected thereon to a dwelling-house to be occupied by not more than two families, and limits the occupancy of the building to be erected to the purpose of a dwelling. Exclusive of this lot, thirty lots on this tract were similarly restricted, and as to the thirteen fronting on Fairfield Avenue, the restriction limited the erection of buildings thereon to be occupied for a store, or a store with one family, and the store was to be used for the sale of ordinary merchandise. Reading these restrictions together and considering the purpose of the grantors, it seems plain that they intended to restrict all portions of this tract, including this

corner lot, to residential purposes, and that none of it was to be used for business purposes except the thirteen lots on Fairfield Avenue, and that the business to be conducted on these thirteen lots was further restricted to stores "to be used for the sale of ordinary merchandise." Defendant is conducting a store for the sale of automobile accessories on lot two, and is using lots two and three for its gasoline station for the sale of gasoline, oil and grease. Upon lot one defendant has constructed a crushed stone driveway which it uses in connection with its business conducted on lots two and three, adjoining. This business defendant operates twenty-four hours of the day. The blue-prints giving the complete detail of the layout of defendant's business reveal the importance of its use of lot one in connection with the business conducted by it on lots two and three which are inside lots. Lot one has a broad frontage of one hundred and thirty feet on this avenue. Across it defendant has constructed a driveway which furnishes the only means of access from the north on Ellsworth Street to its business, and the only means of egress for automobiles entering lot three from the south. Its patrons are those using automobiles and they pass to or from lots two and three over and across lot one. The direct benefit to such a business from having such use of a corner lot is perfectly manifest, and its advertising value to the business is, of course, large. The use defendant makes of lot one makes of it an integral and valuable part of its business. It was a use for a business, and not a residential purpose. If defendant had erected a store covering lot two and had made the approaches to the store across lot one and all deliveries to or from the store in its own trucks as well as its patrons' conveyances were from lot one, could it be said that lot one was not used for business purposes

because no building had been erected thereon? If defendant can maintain its driveway for the uses of its business across lot one, we see no reason why it may not maintain its tanks under ground on lot one, or use it for storage purposes. Nor why, if the store on lot two were a lumber or coal business, the lumber or coal might not be piled upon lot one. It is apparent that such uses would violate the primary purpose of the Bartram heirs in restricting the uses of all lots on Ellsworth Street, including lot one, to residential purposes exclusively. The case nearest in its facts to the instant case is *Laughlin* v. *Wagner,* 146 Tenn. 647, 244 S. W. 475. The defendant owned land fronting on Belvedere Street and Madison Avenue. It was subject to the restriction, "Any house erected on the Belvedere side to be used for residence purposes only, to be two stories or more in height, and to be built on established house lines." The defendant also owned the lot lying between the plot on Belvedere Street and that on Madison Avenue, which was unrestricted. He purposed building for business uses on his unrestricted plot and using the Belvedere Street plot as an entrance to his business on the unrestricted plot. The court held: "We think a fair interpretation of the restrictive clause in question would permit any use of the Belvedere side of the street which would be consistent with its use for residential purposes only. The clause does not require that a dwelling-house shall be erected on the lot, and it is not intended to prohibit all uses thereof unless the house is built. It was evidently intended to prescribe the kind of building which should be erected, and the manner of and the particular use which should be made of the building itself. In other words, if the building had in all respects complied in form and location with that suitable as a residence, nevertheless the building could not be used for pur-

poses not ordinarily and reasonably connected with such a use. On the other hand, whatever the character or form of the building, it would be permissible to use it for residential purposes, and if there be no building at all, it could be used for purposes consistent with an incident to its use for residential purposes. From this interpretation it follows that the Belvedere side of this lot could not be made use of in such a way as that the manifest purpose would be to serve the business houses adjacent to it. For example, it could not be used as affording an intentional passageway or entrance into the business house. Any structure, whether strictly a house or not, such as a concrete driveway, which devotes the use of the property to the carrying on of a business, would be violative of this clause, but the use of the lot for decorative purposes, such as flower beds or as a walkway on the lot itself, would not violate the manifest intent and purpose of this clause. In other words, any use of this lot which might be reasonably incident to its use for residential purposes is permissible, but it is not permissible to put the lot into service as an incident to the business houses on the adjacent portion of the lot. . . . This does not mean that the defendants may not use it for flower beds or for walkways, but it does mean that no portion of the Belvedere side can be used as a means of service to the business being conducted upon the adjacent lots or portions of the lot."

We think the plaintiff was entitled to an injunction restraining the defendant from using lot one for any purpose in connection with the business conducted on lot two, or for any purpose other than that specified in the restriction contained in the conveyance of the Bartram heirs to Linsky. The restriction as to lots two and three is that no building shall be erected thereon to be occupied for any purpose except stores

and dwellings; the store to be used for the sale of ordinary merchandise and the buildings not to contain more than one family besides the store. The sale of automobile accessories from this store located on lot three falls exactly within the terms of this restriction. So that the plaintiff's claim that the defendant has violated this restriction must be that the sale of gasoline, oil and grease in the manner in which defendant's business is carried on is not that of the sale of ordinary merchandise, or that the manner of carrying on the business is not by means of a store. Merchandise is defined as every article of traffic customarily bought and sold for a profit. *Kohlsaat & Co.* v. *O'Connell,* 255 Ill. 271, 99 N. E. 689, 690. The traffic in these articles of commerce is incredibly large. The automobile ministers to the necessities as well as the recreation and pleasure of a majority of our people. It has ceased to be a luxury and become a necessity of modern life. The common understanding would include these articles of commerce within the designation of "ordinary merchandise." An ordinance specified that a merchant is one who deals in the selling of goods, wares and merchandise at any place, stand or store. The court held: "A corporation having stationary tanks within the corporate limits of a city, and wagon tank-drivers about the city, from which tanks oil is sold, is a merchant, within an ordinance defining a merchant to be a person selling goods, wares and merchandise at any stand or place occupied for that purpose." *Troy* v. *Harris,* 102 Mo. App. 51. In *Gunther* v. *Atlantic Refining Co.,* 277 Pa. St. 289, 121 Atl. 53, the restriction, in an agreement between two adjoining lot owners reciting the ownership of the adjoining lots, stipulated, for the consideration of $1, that "no store building shall be erected on the premises owned by the first party [Paradine] above described." The

Mellitz *v*. Sunfield Co.

court in its opinion said: "Appellant finally argues that the erection contemplated by the Atlantic Refining Company, is not a store building within the meaning of the agreement. The word 'store' has been broadly defined as a place where merchandise of any kind is kept for sale. . . . The defendant proposed to use the premises for the purpose of retailing gasoline and oil for delivery from tanks constructed outside and in front of the building; that such use was for the purpose of trading and came within the designation of a store within the meaning of a clause restricting the premises to residential purposes can hardly be doubted." The fact that the sale of gasoline is subject to governmental license and supervision does not prevent its being ordinary merchandise. If so, certain articles of trade and universal use, for the sale of which druggists, hardware dealers and grocers are required to obtain licenses, would fall outside the term of "ordinary merchandise."

These authorities and the common understanding agree that gasoline, oil and grease sold for a profit are traffic in ordinary merchandise, and that anyone dealing in them under the circumstances of the instant case is a merchant. Does the fact that the restriction is as to a store to be used for ordinary merchandise exclude the doing of this business by the agency of tanks and pumps outside the store? We think this too narrow a construction of this restriction. If the store were a grocery or fruit store it would not cease to be a store if the major portion of the stock were kept outside the store. The same conclusion must follow as to many lines of business. Whatever is incident to, and a convenience to, the conduct of a store engaged in the sale of ordinary merchandise is permissible so long as it does not conflict with municipal regulation or become a nuisance. Whether the gaso-

line be sold from pumps located on the piazza of the store, or located across the driveway passing the store, it is in either case a part of the business conducted in and from the store.

There is no error in the judgment as to lots two and three; there is error as to lot one and the Superior Court is directed to render its judgment in accordance with this opinion as to lot one.

In this opinion the other judges concurred.