The bill is filed claiming that the defendants are the owners of the premises known as No. 109 South Dover avenue, in Atlantic City, New Jersey, are violating the terms and conditions of certain restrictions set forth in their chain of title.
The restrictions read:
"1. That no building or buildings shall be erected upon the above-described premises except a single dwelling-house to be devoted exclusively to private dwelling-house purposes. A brick or stone private garage excepted.
"2. That no building or buildings shall be erected upon the above-described premises anywhere nearer to the front property line than twenty feet, nor within five feet of the side or rear lines; that no bay window or other similar structure shall extend more than two and one-half feet beyond the main building or part thereof of which it forms a part, and that no porch veranda shall have an elevation of more than six feet above the curb line of the avenue upon which the land herein described fronts, and shall not be more than twelve feet in width, or within six feet of said property lines, except on the ocean side of dwellings erected in the beach-front lots. *Page 674 
"3. That no buildings shall be erected upon the land herein described costing less than sixty-five hundred dollars [$6,500].
"4. That no building shall be erected upon a lot having a frontage less than fifty feet on said streets between and including Elberon and Annapolis avenue, and as said avenues are at present plotted, except a thirty-foot lot on the west side of Ridgeway avenue feet feet south of Atlantic avenue as now plotted.
"5. That no everhead telephone, telegraph or electric light or other electric wires or poles or supports for the same shall be erected or maintained on the land herein described, except such as may be erected thereon through legal proceedings.
"6. That no undertaker shall be permitted to conduct business on any part of the herein-described property.
"7. That no signs of any kind, excepting house numbers or physicians' signs of the usual size, shall be placed or erected upon or within any part of the herein-described property."
The contention of the complainants is, that the defendants are conducting a boarding-house, and not occupying or using the premises for "private dwelling-house purposes."
At the conclusion of the final hearing, I expressed myself as follows:
"The situation as I see it, to state the facts as I see them, is that these two sisters have purchased this property as a speculation. One of the sisters resides with her husband in Atlantic City. The other sister resides with her husband in the premises in question. The property is much too large for the use of this sister and her family, and she has from time to time, the testimony would seem to indicate, almost continuously had visitors at this house who were either relatives, close or intimate friends, who, according to her testimony, which is the testimony we are governed by in this case, have paid to her such amount of money as she figured out to be a fair proportion of the cost of operating the house, or, as the brother expressed it, such amount of money as it was necessary for her to pay that she would not have been called upon to pay if the guests had not been there. The other sister has likewise entertained friends there, for which entertainment she says she has given her sister the proportion of the cost. Mrs. Blum apparently has little knowledge of the cost of operating the house. I am now speaking of operating it, not from the financial end of ownership, but of the occupancy of the house. *Page 675 
"The carrying charges of the house, such as taxes, interest and items of that nature, are borne, share and share alike. Mrs. Blum intimates that if there is any money received from those friends, relatives or other persons at the house in excess of the actual cost, that that is used in the settlement of the overhead charges. Mrs. LeBeck, as I recall, testified that there never was any excess at all, that she never collected from any of her relatives, friends or other persons any more money than she actually paid out therefor.
"As a business I do not see that it is proven that the sisters were partners — if it was a business. As an ownership of the property, without doubt, they are partners.
"Now, the question resolves itself to this one issue: Does the use of a house and the permitting of persons to be guests therein, those guests paying a proportionate share of the cost of their living, constitute that a boarding-house? That is the issue, as I take it, and it now is before the court to determine.
"The complainants, of course, have admittedly been in a position of having no proof to offer except such proof as they were able to obtain from the defendant, except two items of proof. One is the advertisement. Mrs. LeBeck will neither deny nor affirm that advertisement. The advertisement does speak of `winter rates,' which would indicate that a house for convenience of guests or boarding-house was being conducted.
"The second item is the letter addressed to this man Cooper, which the complainants have proven to have been written by Mrs. Blum, who explains why she wrote it. I am not at all impressed with the character of Cooper as a guest, or his being there as indicating that this house was a boarding-house. On the contrary, the testimony would seem to indicate to me that, so far as he was concerned, he was assured that it was not a boarding-house, that he could not have accommodations there, and that he was compelled to leave the very next morning. Of course, I have no knowledge why Mr. Cooper is not here to testify to what he found the facts to be. He was complainants' affiant, but is not here to-day, *Page 676 
and, of course, the testimony as produced by the complainants concerning his presence does not, in my view, aid them at all.
"Therefore, it comes right down to the one point in my mind, Does the use of a house in the manner indicated by excerpts from the testimony and understanding of the testimony of Mrs. LeBeck and Mrs. Blum, and, of course, qualified and explained by the brother and Mr. Harris, constitute that house a boarding-house?
"I will, of course, take the opportunity to examine the cases which have been called to my attention. I am making this statement so it will be unnecessary for me to make another resume of the facts as I find them. I will do that as quickly as possible."
There seems to be no definition of "private dwelling" adopted by the court of this state.
The late Chancellor McGill, in Skillman v. Smatheurst,57 N.J. Eq. 1 (at p. 5), said:
"I think, also, that the flat cannot be deemed a privatedwelling. It is really a community-house, designed for the accommodation of more than an individual and his household, which I consider to be the sense in which the word `private' is to be taken."
The late Vice-Chancellor Howell, in Koch v. Gorruflo,77 N.J. Eq. 172 (at p. 174), said:
"There is a very broad distinction between a private residence and a flat or apartment-house. This distinction was very clearly made by Chancellor McGill in the case of Skillman v.Smatheurst, supra. There the covenant provided that the premises conveyed should not be used for any other purpose than a private dwelling or private dwellings. The defendants began the erection of a three-story frame flat-house with five rooms on a floor, suitable for three families. The chancellor held that the buildings, which were in course of erection, were not private dwellings, and were, therefore, violative of the covenant, which restricted the use of the land to the erection of private dwellings. This was followed by Vice-Chancellor Garrison in the case of Lignot v. Jaekle, 65 *Page 677 Atl. Rep. 221. It has been held in England that an effectual way of prohibiting every kind of business is to stipulate that buildings to be erected on the land shall not be used otherwise than as private dwelling-houses. A restriction of this character will prohibit a school (Johnstone v. Hall (1856), 2 K. J. 414); or a charitable institution (German v. Chapman, 7C.D. 271); or a boarding-house for scholars (Hobson v.Tulloch (1898), 1 Ch. 424); or a studio (Patman v.Harland, 17 C.D. 353). In Rogers v. Hosegood (1900), 2Ch. 388; 69 L.J. Ch. 652, it was held that where the covenant was that every house to be erected should be adapted for and used as and for a private residence only, is broken by the erection of a block of residential flats. In Gannett v. Albree,103 Mass. 372, it was held that where a lease provided that the premises should be used strictly as a private dwelling, the condition is violated by the use of the premises as a public boarding-house; and in New York, in Levy v. Schreyer, 27 App. Div. 282, it was held that a building constructed so that it can be occupied by three families living separate and apart is not a private dwelling within the provisions of a covenant not to erect any tenement-house or any houses except private dwellings, and whether it was intended to be used by more than one family was immaterial.
"The distinction between a private dwelling-house or a private residence on the one hand, and a house built or occupied as a residence for two or more families, is quite obvious."
This appears to be in accordance with the opinions as annotated in 18 A.L.R. 460.
I find that the defendants are not operating an inn or tavern, nor are they conducting a boarding-house, but I am convinced that the use of the premises as made by them is a violation of the restrictive covenants.
A decree will be advised in accordance herewith. *Page 678