NECHMAN *v.* SUPPLEE.

1. Covenants—Building Restrictions—Waiver.
    In a suit by property owners to enjoin the erection of a four-family apartment building in a subdivision restricted to one-family residences, evidence *held*, to confirm plaintiffs' contention that they had not waived their rights in the instant case.[1]

2. Same—Estoppel.
    Minor departures by property owners from the restrictions imposed on a subdivision, distinctly different from the infraction charged in this suit, and not sufficient to change the general appearance, conditions, and character of the subdivision, were properly held by the court below not of such moment as to bar their right to the relief sought.[2]

3. Same — Mandatory Decree Requiring Razing of Partly-Constructed Building Justified.
    Proofs showing that defendant was guilty of a flagrant

[1]Deeds, 18 C. J. § 468; [2]Id., 18 C. J. § 465 (Anno).

and persistent attempt to break the restrictions after he was warned of the consequences warranted the decree of the court below permanently restraining the erection of the apartment building and further requiring that the partly-constructed building, which has the appearance not of a one-family residence but that of a large warehouse or storehouse, be entirely taken down.[3]

Appeal from Wayne; Dunham (Major L.), J., presiding. Submitted October 20, 1925. (Docket No. 28.) Decided October 4, 1926.

Bill by Charles Nechman and others against Leo Supplee and others to restrain the violation of building restrictions. From a decree for plaintiffs, defendants appeal. Affirmed.

*Echlin & Lendzion,* for plaintiffs.

*Leon Dreifuss,* for defendants.

STEERE, J. Defendant Supplee appeals from a decree of the Wayne county circuit court, in chancery, permanently enjoining him from violating certain building restrictions imposed on Harry A. Bell's Ferndale Gardens subdivision of lot 4 and part of lot 5 of the subdivision of lot 9 of the Shipyard tract in town 2 south, of range 11 east, located in the southwesterly part of the city of Detroit. · The restrictions were embodied both in the officially approved and recorded plat of said subdivision and in contracts and deeds given purchasers of lots.

Lot 23 of this subdivision, in regard to which violation of restriction is claimed, is located on the south side of Mandale avenue. The fee title to it is owned by one William Ross with whom defendant Supplee had been associated in the building business. They had together erected other buildings in this subdivision, were familiar with its restrictions, and were known

---

[3]Injunctions, 32 C. J. § 334.

by witnesses who had worked for them as the firm of Ross & Supplee, but both denied they were partners in the building project involved here. Ross, who said he owned "a good many lots in this subdivision," denied that they ever were partners but admitted that they did have "two or three little joint ventures." Supplee, who testified he was owner of the building he was erecting on lot 23, was asked and answered:

"*Q.* William Ross has the deed to the lot?
"*A.* Yes, sir.
"*Q.* Yet he has no interest in this building that is going up?
"*A.* Not at the present time.
"*Q.* 'At the present time'—what do you mean?
"*A.* No interest in the building, now nor ever. I have a contract. * * *
"*Q.* When did you get this contract from Mr. Ross?
"*A.* I can't tell you the exact date. I bought the lot from Mr. Ross some time in April.
"*Q.* 1923 or this year?
"*A.* No, not this year. Before the building—before I started any building there of any kind."

The material building restrictions on that subdivision applicable to lot 23 are as follows:

"No buildings or structures shall be erected upon said premises other than those stipulated for same and for the entire subdivision as follows, to wit:
"Upon any lot on either side of both Mandale avenue and Mason place, west of the alley crossing said streets in said subdivision. No buildings or structures shall be erected upon the front portion of same other than a one (1) family residence, not more than thirty (30) feet in width nor more than two and one-half (2-1/2) stories in height, and to be constructed of brick, brick veneer, cement or stone construction, the extreme front portion of which (excepting open porches) must be located twenty-five (25) feet from the front lot line of said lot and the extreme westerly portion thereof (with no exceptions) must be located three (3) feet from the westerly line of said lot."

The violations of restrictions complained of here are

persisting in the erection of a four-family flat on this lot in a subdivision restricted to one-family residences and inclosing the porches or sun parlors for each of the four flats projecting beyond the 25-foot limit, or building line for the extreme front portion of the building (excepting open porches).

Defendant admittedly prepared his plans, obtained a permit from the city authorities for, and started to build, a four-family flat on said lot 23. His explanation for thus violating the building restrictions is that he spoke to plaintiffs, "both of the gentlemen," apparently referring to plaintiffs Nechman and Lentz, telling them that he "had in mind getting a permit for a four-room flat," and they said they "would make no objections." He then got a permit for a four-family flat and had the building ready for the second story joists, first learning of any objections when an injunction was served upon Ross, but did not change his plans until an injunction was served on him.

Plaintiffs deny any permission or waiver by act or deed. The residents and property owners in that part of the restricted district had previous experience with the building activities of Ross and Supplee in their vicinity. In the case of *Nechman* v. *Ross*, 225 Mich. 112, a bill was filed by interested property owners against Ross and Supplee to restrain them from violating these building restrictions on a nearby lot in this same subdivision and it there developed that Ross was the responsible party. Nechman and Lentz were, with others, also plaintiffs in that case. They first obtained a temporary injunction in this case against Ross in whose name the fee title of lot 23 stood, but were met with a reversal of the parties as to denial and assumption of responsibility and thereupon secured a temporary injunction against Supplee. Lentz testified to notifying both Supplee and Ross that the proposed building violated the restrictions, and Ross said he was going to break the restrictions if it

cost him $10,000; that "We had already started the injunction, but it wasn't filed yet. I simply said to him we was going to file an injunction." The participation by Nechman and Lentz as plaintiffs in the previous suit with Ross and Supplee, where the violation complained of was only construction of an inclosed porch beyond the building line, convincingly tends to confirm plaintiffs' denial of any waiver of rights in the instant case.

Defendant also urges here, as was contended in the former case, that plaintiffs are estopped from claiming equitable relief by their own violations of these restrictions in various particulars. It was conclusively shown by plaintiffs' testimony and photographs produced in evidence that all the buildings in this subdivision on Mandale avenue and on Mason place are as constructed single, private residences, except the partly constructed four-family flat in question here. The trial judge who heard the case and visited the premises so found and stated in his findings that the various violations charged against plaintiffs by defendant "are unworthy of notice and constitute no estoppel to plaintiffs." If conceded, those violations are but minor departures from the restrictions distinctly different from the infractions charged against defendant, not sufficient to change the general appearance, conditions and character of the subdivision, and not of such moment as to be held a barrier to enforcement of plaintiffs' rights.

This case shows a more aggravated violation of the restrictions in the same subdivision and no stronger defense than the record discloses in *Nechman* v. *Ross, supra*. The trial court rightly so held and made the preliminary restraining injunction permanent, with a further mandatory injunctive requirement that the partly constructed four-family flat should be entirely taken down.

The defense protest against the mandatory pro-

vision of the decree appealed from as a drastic and
oppressive mandate unwarranted by the facts and
unsupported by law, there being "nothing in the build-
ing restrictions compelling a builder to erect any cer-
tain size building　＊　＊　＊　　(or) use any certain
architectural style or design."

It is true that within the limits of area specified the
restrictions do not compel the building to be of any
certain size, style or architectural design, but they do
expressly forbid any building to be erected upon the
lot other than a one-family residence and the owner
may not, under the claim, or guise, of a one-family resi-
dence, construct a four-family flat as defendant was
palpably attempting to do.

The testimony shows defendant was familiar with
those restrictions and the attitude of the resident
owners in that locality.　With that knowledge he ob-
tained a permit to construct a four-family flat on April
23, 1923.　After his construction had reached a point
where it was manifest what he was building and warn-
ing had been given him, an injunction was obtained
against him and he ceased operations for a time.　But
on July 26, 1923, he obtained a permit from the city
authorities for construction on said lot of a one-family
dwelling and ostensibly proceeded with his building
toward that end.　It soon became apparent that he
was still following his plans for a four-family flat
and on two occasions he was cited before the court
for contempt in alleged violations of the injunction.
When first enjoined, according to his own testimony,
the studding was simply up to the second floor and
he was putting on the joists.　The testimony shows
that he now has the structure erected, inclosed and
brick-veneered but not finished within.　As far as
he has gone the evidence is persuasive that the entire
layout is in harmony with his plan for a four-family
flat.　Lentz, a carpenter and building contractor with
years of experience, who had examined the structure,

testified, with defendant's plan for a four-family flat before him, that it had been followed in the work done.

On cross-examination defendant was asked and answered in part as follows:

"*Q.* What sort of a garage have you got there?
"*A.* Four-car.    *    *    *
"*Q.* There is no change in the basement plan, is there?
"*A.* No.
"*Q.* Not at all?
"*A.* No more than—well, there is a change; yes, sir. One furnace.    *    *    *
"*Q.* You already have four chimney flues in there?
"*A.* Certainly.    We had the chimneys started before the injunction was on.    *    *    *
"*Q.* How many fruit cellars have you now?
"*A.* The original plan, I think, called for four.
"*Q.* How many have you got now?
"*A.* I think one.    I have forgotten the plan nearly.
*    *    *
"*Q.* There is a partition all the way through the building, isn't there, on each floor?
"*A.* Yes, sir.
"*Q.* As shown on this plan here?
"*A.* As shown on the four-family; yes, sir.    *    *    *
"*Q.* According to this single residence plan the porches were to be open in the front?
"*A.* They are yet.
"*Q.* You are sure about that?
"*A.* I am sure of what my intentions are, yes.
"*Q.* Oh, I mean the way it is now?
"*A.* There is windows hung on with loose pin butts, swinging out; yes, sir.    *    *    *
"*Q.* There is nothing to show any spaces for windows down on this flat plan, is there?
"*A.* No, sir.
"*Q.* But you have been (them?) in there?
"*A.* Yes, sir.    *    *    *
"*Q.* How many coal chutes have you in your basement now?
"*A.* I think there is four.    Those holes were in there before the suit was started.    *    *    *
"*Q.* Didn't you ever make the statement, or Mr.

Ross in your presence, to anybody that you were going to violate the restrictions on Mason place and Mandale and put four-families up there?

"A. No, I never made any such statement.

"Q. Did you ever hear Mr. Ross in your presence tell anybody that?

"A. I don't remember.

"Q. You wouldn't deny that, would you?

"A. I wouldn't deny it; no, sir.

"Q. This building when completed will look just like the four-flats on Ellsmere from outward appearance, won't it—the design?·

"A. Practically; yes, sir.·

"Q. You put these windows in these front projections or sun rooms, so-called, after an injunction was· served on you, didn't you?

"A. Yes, sir.    *    *    *

"Q. And you put the whole chimney up complete after this, didn't you?

"A. Complete—    *    *    *

"Q. Is the chimney in there now?

"A. Yes, sir.

"Q. With the four flues?

"A. Yes, sir."

After listening to the testimony of witnesses and verifying or refuting it by personal examination of the premises, the court said, in part:

"These so-called open porches are built out into this restricted portion and it is claimed that these alleged open porches are not porches at all.    They are as high as the main building.    There is no outside entrance to them.    The floors of these four porches are constructed upon a level with the floors upon the inside of the main building and connected with the rooms in the main building.

"The building itself (and the court saw the premises and examined this building) has the appearance not of a one-family dwelling but that of a large warehouse or storehouse.    *    *    *

"The design and plan of the building itself shows a wilful and intentional violation of the restrictions as to building upon this lot and contained in defendant's deed.    *    *    *

"This building if permitted to stand as now constructed, if used only for one family in which to reside, would be a violation of the restrictions both in the plat and deed.    It would destroy the uniformity of the building designed to be placed upon this plat and would greatly depreciate all of the property, not only in the block in question, but also the lots in that portion of said division lying northerly and southerly from said block.    *    *    *
"The best argument in the world that can be made against defendant is to see the building itself or the photographs of it which are in evidence in this case."

Without further reviewing the testimony at length, we deem it sufficient to say that the record fairly sustains the conclusion of the trial court that defendant has been guilty of a flagrant and persistent attempt to break the restrictions of this subdivision, supplemental to a previous venture to that end of his former joint venturer, if not partner, Ross.

On the mandate in the decree requiring that the building must be removed, we adopt as well in point the following reasoning and conclusions of the supreme court of Massachusetts in a closely analogous case:

"It is strongly urged that a mandatory injunction ought not to issue, for the reason that it would operate oppressively and inequitably, and impose on the defendant a loss disproportionate to the good it can accomplish, and that the plaintiffs ought to be relegated to financial compensation by way of damages.    This remedy is a drastic one, and ought to be applied with caution, but in cases proper for its exercise, it ought not to be withheld merely for the reason that it will cause pecuniary loss.    It has been found that the defendant, with full knowledge of the restrictions, 'deliberately attempted' to override them, and thus deprive the district of the character given it by the restrictions.    He took his chances as to the effect of his conduct with eyes open to the results which might ensue.    It has been the practice of courts to issue mandatory injunctions upon similar facts.    (Citing cases.)    Intrenchment behind considerable expenditures of money cannot shield premeditated efforts to

evade or circumvent legal obligations from the salutary remedies of equity." *Stewart* v. *Finkelstone*, 206 Mass. 28 (92 N. E. 37, 28 L. R. A. [N. S.] 634, 138 Am. St. Rep. 370).

The decree of the lower court will stand affirmed, with costs to plaintiffs.

BIRD, C. J., and SHARPE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

Justice MOORE took no part in this decision.