## Joseph K. Hooker et als. *v.* Frederick J. K. Alexander.

Maltbie, C. J., Jennings, Ells, Dickenson and Inglis, Js.

Argued November 5—decided December 2, 1942.

*Henry J. Goldberg,* for the appellant (defendant).

*Reese H. Harris, Jr.,* with whom was *J. Harold Williams,* for the appellees (plaintiffs).

*Frederick H. Waterhouse,* amicus curiae, on behalf of Leon Henderson, Price Administrator.

JENNINGS, J. The main question at issue is whether the keeping of a rooming house violates the covenant in a deed that the grantee will not erect or maintain on the premises conveyed any building except one one-family dwelling house.

The finding, corrected in one minor particular, discloses the following facts: In 1921, W. L., J. L. and P. L. Goodwin were the owners of a tract of land on Asylum Avenue in Hartford. At that time they laid it out as an exclusive and select real estate development containing twenty lots. All of these lots were sold subject to similar restrictions running for twenty years. Practically all of the present owners of these lots have joined as plaintiffs. The deed of the first lot was dated October 2, 1922, and of the last, September 17, 1925. The restriction on the first lot sold expired October 2, 1942, and that on the second lot sold on November 2, 1942.

The lot of which the defendant has the life use and which he now occupies was originally sold April 12, 1923, by warranty deed containing the following covenant: "As part consideration for this deed the Grantee for himself, his heirs and assigns agrees to and with the Grantors, their heirs and assigns forever, that for a period of twenty (20) years from and after the date

hereof he will not erect or maintain, or permit to be erected or maintained, any building except one one-family dwelling-house, with necessary outbuildings, such dwelling-house to cost at least Twenty Thousand Dollars ($20,000)." The covenants as to the other lots differed only slightly in phraseology except for that on the first lot sold, which contained no provision as to cost and omitted the word "maintain." The house on the first lot was completed at the time of the first conveyance and both house and lot were sold for approximately $19,000. Since that time and before this suit was brought, the owners have expended about $15,000 in alterations, and the structure was then and since has been a one-family residence.

After the death of his wife in 1938, the defendant took in three paying guests to keep him company. They stayed six months. Thereafter, by rearranging the interior and adding bathrooms, he increased the facilities for taking roomers, advertised for them and at the time of trial had eight or more, paying in the aggregate nearly $100 a week. One suite contains housekeeping facilities and two other tenants use the house kitchen to prepare their food. In one of his applications for a permit to alter the premises, sworn to by him, the defendant described them as being occupied as a rooming house. He maintained his house as a rooming house and not as a one-family dwelling. This has reduced the value of other properties in the development and has impaired its reputation. The court visited the premises.

The court concluded that the use made by the defendant of his house was a violation of the covenant quoted; that the covenants in all the deeds were substantially uniform; that the plaintiffs were entitled to enforce them, particularly the plaintiff James L. Goodwin, one of the grantors in the deed in the de-

fendant's chain of title containing the covenant sued on.

When, under a general development scheme, the owner of property divides it into building lots to be sold by deeds containing substantially uniform restrictions, any grantee may enforce the restrictions against any other grantee. *Stamford* v. *Vuono,* 108 Conn. 359, 364, 143 Atl. 245; *Whitton* v. *Clark,* 112 Conn. 28, 35, 151 Atl. 305; *De Gray* v. *Monmouth Beach Club House Co.,* 50 N. J. Eq. 329, 340, 24 Atl. 388; Berry, Restrictions on Real Property, § 315. The general rule of interpretation is that restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes, will not be extended by implication. If their language is of doubtful meaning, it will be construed against rather than in favor of the covenant. *Bassett* v. *Pepe,* 94 Conn. 631, 637, 110 Atl. 56. The covenant is to be read in the light of the circumstances existing at the time it was entered into and the purposes sought to be attained thereby. Id., 638; *Finlay* v. *Swirsky,* 103 Conn., 624, 634, 131 Atl. 420. These circumstances and purposes are set forth in the finding. The owners of this tract of land, in opening it for building, desired to have it maintained as an exclusive and high class residential development for a period of at least twenty years. It was for this reason that their grantees were forbidden to erect or maintain any buildings except one-family dwelling houses costing at least $20,000. The term one-family house is in common use in this jurisdiction. Its use differentiates this case from many of those cited in the briefs. There appears to have been no occasion for defining it in our cases. The reason for this may well be that it needs no definition. A one-family house is a house occupied by one family. *Powers* v. *Radding,* 225 Mass. 110, 114, 113 N. E. 782; *Kalb* v. *Mayer,* 164

App. Div. 577, 150 N. Y. S. 94; *Sanford* v. *Keer*, 80 N. J. Eq. 240, 246, 83 Atl. 225; *Gillis* v. *Bailey*, 21 N. H. 149, 157. A house used as is that of the defendant for eight roomers paying $100 a week, run as a commercial proposition and containing a separate suite with complete living accommodations, is not a one-family house as that term is used in the covenant. The defendant's claim that the word "maintain" relates to the structure of the house rather than its use is without merit. *Sayles* v. *Hall*, 210 Mass. 281, 284, 96 N. E. 712; *Trainor* v. *LeBeck*, 99 N. J. Eq. 673, 677, 134 Atl. 355; affirmed, 101 N. J. Eq. 823, 139 Atl. 16; *Dingeman* v. *Boerth's Estate*, 239 Mich. 234, 214 N. W. 239. As pointed out by the plaintiff, if this were true, there would be nothing to prevent the use of a one-family house for the most objectionable purposes as long as the exterior was kept in the same condition. The conclusion of the court that the covenant had been violated by the defendant was correct.

The slight variations in the terms and expiration dates of the several covenants do not render them unenforceable. *Hartt* v. *Rueter*, 223 Mass. 207, 211, 111 N. E. 1045; *Allen* v. *Barrett*, 213 Mass. 36, 39, 99 N. E. 575; *Velie* v. *Richardson*, 126 Minn. 334, 337, 148 N. W. 286. The appeal to the regulations of the Office of Price Administration is irrelevant under the facts.

Finally, the defendant claims that the covenant should not be enforced because it has less than six months to run (this time was a year and a half when the suit was brought), the plaintiffs are not damaged, the restrictions have run out on two of the properties and the rights of the parties are doubtful. The question of damage is immaterial as far as the right of the plaintiffs to enforce the restrictions is concerned. *Armstrong* v. *Leverone*, 105 Conn. 464, 472, 136 Atl. 71. It is sufficient for the plaintiff to have a legal or

equitable right which he is entitled to enforce. *New England R. Co.* v. *Central Ry. & Electric Co.*, 69 Conn. 47, 56, 36 Atl. 1061. The rights of the parties are not doubtful. The determination of the remaining claims was fairly within the discretion of the trial court, which viewed the premises and heard the witnesses. Berry, op. cit., § 261. Had the court refused the injunction on these grounds, we should not have been inclined to interfere. *McClure* v. *Leaycraft*, 183 N. Y. 36, 43, 75 N. E. 961. We are not prepared to say, however, that it abused its discretion in issuing the injunction. *Robinson* v. *Clapp*, 65 Conn. 365, 380, 32 Atl. 939.

We again call attention to the fact that a memorandum of decision should not ordinarily be made a part of the finding. Practice Book, § 361; Conn. App. Proc., p. 121, § 90. One of the unfortunate results of doing so is well illustrated in this case. The memorandum contains statements of fact largely repeated in the finding, which the defendant sought to correct; it was necessary for him to assign error as to the statements in both, and as the paragraphs of the former were not numbered the assignments addressed to it are almost unintelligible.

There is no error.

In this opinion the other judges concurred.