MARGARETTA M. K. MAGANINI ET AL. *v.*
JACQUELINE D. HODGSON

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued June 8—decided August 7, 1951

*Joseph L. Melvin,* with whom was *George W. Oberst,* for the appellant-appellee (defendant).

*Jack H. Courage,* with whom was *William C. Strong,* for the appellant (named plaintiff) and the appellees (plaintiffs).

JENNINGS, J. This is a suit by the owners of two lots to restrain the claimed violation of common restrictions

by a third lot owner in the same tract. Judgment was for the plaintiffs Maloney against the defendant and for the defendant against the named plaintiff. The losing parties have appealed. Such dispute as exists with reference to the facts does not go to the vitals of the case. The real complaint of the appellants is that the facts found do not support the conclusions reached. No material change can be made in the finding.

On March 20, 1913, a developer received a deed to a tract of land in Greenwich restricted to use for private residences. He subdivided the tract into eight lots and eventually sold them all. A map showing this subdivision was recorded July 30, 1913. A private road, Calhoun Drive, traversing the tract, lies generally in an easterly-westerly direction. As one enters Calhoun Drive from the west, the first lot, No. 5, on the right now belongs to the plaintiffs Maloney. The lot of the defendant, No. 6, adjoins this and also faces north on Calhoun Drive. Across the street, but extending farther to the east, lies lot No. 2, now belonging to the plaintiff Maganini.

Lot 2, the first sold, was conveyed on September 22, 1913, to a predecessor in title of Mrs. Maganini. The main conditions in the long restrictive clause were to the effect that the premises should not be used for business but only for strictly private residences. The lot contained 2.997 acres. Subdivision into parcels of not less than one acre was permitted, but, if that was done, not more than one dwelling house together with garage was to be erected on each parcel. The tract lies in a residence A-1 zone, which requires a minimum lot size of one acre and a road frontage of 125 feet. The restrictive clause in the original deed to each of the other lots expressly prohibited subdivision. Lots 5 and 6 each contained less than two acres of land. The developer expressly obligated himself with respect to lot

2 (Maganini) and lot 5 (Maloney) to impose restrictions on the remaining lots.

Lot 6 was conveyed to the predecessor in title of the defendant on July 12, 1915. The restrictions in this deed differed from those recited in the deed to lot 2, apart from the subdivision provision, only in that the privilege of replacing burned buildings was included. The defendant bought lot 6 on October 23, 1940, but the restrictions were not recited in the deed and the defendant had no actual knowledge of them until this controversy arose.

Lot 5 was conveyed to the predecessor in title of the Maloneys on July 29, 1915, with similar restrictions. It eventually was deeded to them August 30, 1947, and the deed referred to the restrictive covenants. They bought relying on the restrictions. It is unnecessary to consider the details of the other conveyances.

When the parties bought their lots, there was a large residence and a garage and quarters building on each of lots 5 and 6 and two large residences and one garage and quarters building on lot 2. The living quarters connected with the Maloney garage had been for some years and were at the time of trial rented to tenants neither employed by nor related to the Maloneys. Their lease runs out December 1, 1951.

During the spring of 1946 the defendant made extensive alterations in the garage and quarters building on her property to adapt it for occupancy by her invalid husband, herself and her husband's nursing staff. The alterations consisted mainly of extensive internal improvements. The size of the building was increased 280 cubic feet. The cost was over $18,000. Neither Mrs. Maganini nor the Maloneys' predecessor in title objected. After the death of the husband of the defendant in 1948, she decided to live in the garage and quarters building and had plans prepared to that end.

She entered into a contract for alterations which called for the payment of over $17,000, not including the electrical, heating, plumbing, driveway and other work. Work was started December 27, 1949. On January 15, 1950, the plaintiffs consulted an attorney. On January 25, 1950, the defendant received notice from the attorney that she was breaching the restrictions. This was the first actual knowledge she had of these restrictions She immediately stopped the work except to make the house weathertight. At that time she had paid or incurred obligations of at least $10,300. The cost of restoring the building to its former condition would be about $8000 and that of restoring it to its former external appearance, $4000.

The changes planned by the defendant consisted of subdividing the lot, removing certain trees on Calhoun Drive, constructing a driveway to the garage, enlarging its cubic feet by 50 per cent and changing its appearance from the customary garage building with quarters to that of a small private residence. The defendant intends to live in the new house and sell or lease the balance of lot 6 with the large residence. If she is permitted to make these changes, the property of the plaintiffs Maloney will be depreciated $10,000 in value and that of Mrs. Maganini, $25,000 in value, and both will be otherwise rendered less desirable.

On these facts the trial court found that a uniform plan or scheme existed in respect to all of the lots except No. 2, that the changes planned by the defendant violated valid, existing restrictions and that the plaintiffs Maloney could enforce them against the defendant.

"When, under a general development scheme, the owner of property divides it into building lots to be sold by deeds containing substantially uniform restrictions, any grantee may enforce the restrictions against any other grantee." *Hooker* v. *Alexander*, 129 Conn. 433, 436,

29 A. 2d 308; *Whitton* v. *Clark,* 112 Conn. 28, 35, 151 A. 305; *Armstrong* v. *Leverone,* 105 Conn. 464, 470, 136 A. 71; *Mellitz* v. *Sunfield Co.,* 103 Conn. 177, 182, 129 A. 228; *De Gray* v. *Monmouth Beach Club House Co.,* 50 N. J. Eq. 329, 340, 24 A. 388; Berry, Restrictions on Use of Real Property, § 315. The tract was originally deeded to the developer restricted to residential purposes. He put a map on record showing its subdivision. In his first deed, that to lot 2 (Maganini), he expressly obligated himself to impose restrictions on his remaining land and recited the restrictions which were repeated in later deeds, in many respects verbatim. The court was fully justified in concluding that a uniform plan or scheme existed.

The court also concluded that Mrs. Maganini, present owner of lot 2, could not enforce these restrictions "because (a) Lot No. 2 owned by her is not a part of said uniform plan or scheme of development; and (b) said lot was conveyed by the original developer prior to the conveyance of Lot No. 6." As appears from the memorandum of decision, the reason for the first conclusion was that the restrictions in the deed to lot 2 were held to be radically different from and less stringent than those attached to lot 6. The restrictions in the two deeds are a part of the finding. Substantial dissimilarity is not apparent. The chief difference is that the former permitted subdivision and the latter did not. The difference is more apparent than real. There were nearly three acres in lot 2 and less than two in lot 6. It was provided in the deed to lot 2 that, if subdivided, it should conform in all respects to the restrictions on the other lots.

As to the second conclusion, it is true that if the sole evidence relied on consists of restrictions in individual deeds, prior grantees may not be entitled to enforce the restrictions against subsequent grantees. *Whitton* v.

*Clark*, 112 Conn. 28, 35, 151 A. 305. This principle does not apply if the basic requirement of a uniform plan is found to exist. Ibid.; *Hooker* v. *Alexander*, 129 Conn. 433, 436, 29 A. 2d 308; *Armstrong* v. *Leverone*, 105 Conn. 464, 471, 136 A. 71. It is also true, as held by the trial court, that in so far as the later restrictions are more stringent or radically different from the earlier ones the earlier grantee cannot enforce them; *Mellitz* v. *Sunfield Co.*, 103 Conn. 177, 182, 129 A. 228; but the facts of the case at bar do not bring it within the principle stated. There was a general plan or scheme in the case at bar and Mrs. Maganini was entitled to enforce the restrictions notwithstanding the original conveyance of lot 2 by the developer preceded his conveyance of lot 6.

The defendant claims that the plaintiffs are guilty of laches. The defendant started work on December 27, 1949. The plaintiffs consulted their attorney on January 15, 1950, and he warned the defendant January 25, 1950. This constituted no such inexcusable delay as to amount to laches as a matter of law. *Allis* v. *Hall*, 76 Conn. 322, 334, 56 A. 637.

The defendant also claims that the plaintiffs Maloney do not come into court with clean hands. This claim is based on the fact that the quarters connected with the garage on their property are rented to tenants. As pointed out by the trial court, this arrangement involved no change in external appearance and was of a temporary character. The changes planned by the defendant, on the other hand, involved a 50 per cent increase in size and a radical change in appearance and use. In deciding this issue against the defendant, the trial court relied on 3 Tiffany, Real Property (3d Ed.) § 873: "One cannot obtain relief in equity against the violation of a restrictive agreement entered into in pursuance of a general plan if he himself is guilty of a

substantial breach of the same restriction. . . . But the fact that the complainant has himself committed a minor breach of the agreement will not disentitle him to an injunction against a breach by another of considerable magnitude. Nor will his own violation of one restriction estop him to compel the observance of another restriction beneficial to his property." As applied to the facts of the case at bar this is a correct statement of the rule. *Bacon* v. *Sandberg*, 179 Mass. 396, 399, 60 N. E. 936; *Nechman* v. *Supplee*, 236 Mich. 116, 120, 210 N. W. 323; *O'Neill* v. *Wolf*, 338 Ill. 508, 520, 170 N. E. 669; *Loud* v. *Pendergast*, 206 Mass. 122, 124, 92 N. E. 40; *Stewart* v. *Finkelstone*, 206 Mass. 28, 37, 92 N. E. 37; *Adams* v. *Howell*, 58 Misc. 435, 440, 108 N. Y. S. 945; *McGuire* v. *Caskey*, 62 Ohio St. 419, 426, 57 N. E. 53; see *Lyman* v. *Lyman*, 90 Conn. 399, 405, 97 A. 312.

The trial court exercises a large discretion in applying the equitable remedy of injunction. *Hooker* v. *Alexander*, 129 Conn. 433, 438, 29 A. 2d 308; *Hammerberg* v. *Leinert*, 132 Conn. 596, 604, 46 A. 2d 420; Berry, Restrictions on Use of Real Property, §§ 259, 261. On the facts found, we cannot find that the trial court abused its discretion in issuing the injunction in spite of the minor violation of the restrictions by the plaintiffs Maloney. Incidentally, there is no valid claim that Mrs. Maganini was estopped to claim relief on this ground. She could therefore enforce the restrictions as far as this claim is concerned.

The remaining claims of the defendant do not require extended consideration. Lack of actual knowledge of the restrictions cannot aid the defendant. They were on record, and the deeds in which they appeared were referred to in the defendant's policy of title insurance. *Hawley* v. *McCabe*, 117 Conn. 558, 564, 169 A. 192; General Statutes, § 7091. She also takes exception to the finding as to the damage which would be caused the

plaintiffs by the changes planned by her. It is that the aggregate loss in value of the plaintiffs' property would be $35,000. The evidence, received without objection, supports this finding. The doctrine of comparative injury (*Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.*, 120 Conn. 168, 175, 180 A. 303) was not invoked by her and would not aid her in any event. The one ruling on evidence assigned as error was not pursued in the brief.

There is no error on the defendant's appeal. There is error on the appeal of the plaintiff Maganini, the judgment is set aside and the case is remanded with direction to enter judgment as on file except that it should be in favor of all plaintiffs.

In this opinion BROWN, C. J., and INGLIS, J., concurred; BALDWIN and O'SULLIVAN, Js., dissented.