[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION APPLICATION FOR TEMPORARY INJUNCTION CT Page 3014
I.
Richard and Judy Dayton ("Daytons") of Winding Brook Farm Road in Watertown, Connecticut have brought this application for a temporary injunction. As homeowners in a partially completed real estate development entitled Winding Brook Farm, the Daytons presently seek this relief against First Federal Savings and Loan Association.[1] ("First Federal" or "the bank") The bank by virtue of a judgment of mortgage foreclosure has succeeded to the ownership of Matthews-Westport, Inc., the original, but failed developer of Winding Brook Farm. Presently, the bank holds title to a majority of the 51 lots in this subdivision and exercises the responsibilities of successor-developer.
Ancillary to this application, the Daytons filed a two count complaint. Count one, which was resolved previously by a stipulated judgment, accepted by the court August 26, 1991, was brought against Richard Cicchetti and Rita Bozutto, the owners of lot #38 in the subdivision. When this litigation was commenced, Cicchetti/Bozutto were in the process of constructing a residential dwelling on their lot and according to the stipulated judgment, they agreed to "honor all the requirements of the deed restrictions placed on . . . [the] subdivision and recorded in . . . the Watertown Land Records . . . [and] not to use exterior vinyl siding on . . . [their] dwelling but rather . . . install nothing but cedar clapboard siding no more than four inches to weather on . . . [their] dwelling." Stipulated Judgment dated August 23, 1991 at 1.
In count two, brought against the bank, the Daytons complain that Cicchetti/Bozutto are bound by particular deed restrictions recorded on the land records by the original developer, which, in part, require that the proposed plans and specifications for any dwelling be approved by the developer; that these restrictions specify that such plans be "in conformity and harmony of external design and general quality with the existing and/proposed standards of the neighborhood, including consideration of the suitability of the proposed structure, the materials of which it is to be built. . . ." The Daytons further allege that the contemplated use of vinyl siding by Cicchetti/Bozutto is a violation of these restrictions and that pursuant to paragraph 27 of the recorded restrictions, they, as well as the developer, have the right to enforce them.[2] The bank, according to the Daytons' allegations in count two, as the successor-developer, has "failed to require Cicchetti/Bozutto to adhere to the existing criterion for approval and approved a plan or plans which are not in conformity with the existing design and quality required previously of the . . . [Daytons] and all other dwellings CT Page 3015 constructed . . . [previously] in at least one respect that being the installation of vinyl siding." Thus, from a facial reading of this second count, the controversy focuses upon Cicchetti/Bozutto's previously intended use of vinyl siding upon the home they were constructing.
At the conclusion of the evidentiary hearings on this application, the Daytons, after the stipulated judgment was entered as to count one effectively precluding the use of vinyl siding by Cicchetti/Bozutto, now urge this court to issue a temporary injunction forbidding the bank "from approving any plans that are not consistent with the existing design and construction standards and specifications as contained in plaintiffs' hearing Exhibits 7 and 8 known as `Schedule A — Standard and Restrictions previously Imposed.'"[3] — We decline to grant the requested temporary injunctive relief.
 III.
It is axiomatic that the issuance of a temporary injunction involves the "application of familiar equitable principles." Griffin Hospital v. Commission on Hospitals and Health Care,196 Conn. 451, 458 (1985) (citations omitted). Prior to the issuance of such temporary relief, the applicants must convince the court that they have a reasonable degree of probability of success. Id. 457 (citations omitted).
Here, the Daytons request the court to issue a temporary injunction compelling the bank in effect to apply standards of development, particularly the prohibition of vinyl siding; which are not explicitly found in any recorded restriction.[4] The plaintiffs cite us to no persuasive Connecticut authority for the proposition that grantees, such as the Daytons, might sue a grantor-developer who is in the actual process of development to enforce a particular interpretation of deed restrictions. In their brief, the Daytons claim that a "lot owner clearly has the right to require the common grantor to uniformly and consistently apply the same restrictions to all other grantees," and cite us to Hooker v. Alexander, 129 Conn. 433 (1943); Maganini v. Hodgson,138 Conn. 188 (1951); and Whitton v. Clark, 112 Conn. 28 (1930). Plaintiff's Reply Brief in Opposition to Motion to Dismiss, September 16, 1991, at 4. Each of these cases, however, involved litigation between one grantee-homeowner and another grantee-homeowner, not as here, a grantee suing a developer for what amounts essentially to the developer's interpretation of recorded deed restrictions. Of course, covenants recorded on our land records, being in derogation of the common law right to use land for a lawful purpose, must be construed, in the wake of any ambiguity, against rather than in favor of the covenant. Pulver v. Mascolo, 155 Conn. 644, 649 (1967); 5011 Community Organization CT Page 3016 v. Harris, 16 Conn. App. 537, 541 (1988) (citations omitted). Given this state of our law, we are not persuaded that the Daytons enjoy that reasonable degree of probable success which might otherwise compel us to grant temporary injunctive relief.
Additionally, the recorded restrictions by Matthews-Westport not only give the developer solely the right to approve development plans, but also give the developer a reserved right to "cancel or modify by making less restrictive any and all of the aforesaid covenants and restrictions; provided, however, that any such cancellation or modification shall thereafter become applicable to the entire premises." Winding Brook Farm Subdivision Corrected Deed Restrictions, Joint Exhibit #1 25. Since such a right exists only in the developer to approve plans and to modify existing restrictions, these circumstances give us further pause in assessing Daytons' probability of success for a permanent injunction.
Finally, a reading of this two count complaint would indicate that it originated because of Cicchetti/Bozutto's intended use of vinyl siding, which, of course, has been cured with the entry of the stipulated judgment. Thus, there does not appear to be a presently existing ripe controversy between the Daytons and the bank. At best, there exists a fear that the bank, having announced that it is not precluded from approving a plan of development with vinyl siding, may in the future approve such a plan of residential development. Such a nugatory circumstance does not compel us to issue the requested temporary injunctive relief so that we would become a judicial monitor over the bank's further development of Winding Brook Farm.
The application for temporary injunctive relief is denied.
So ordered.
WILLIAM PATRICK MURRAY, J. A JUDGE OF THE SUPERIOR COURT
APPENDIX 1
 SCHEDULE A STANDARDS AND RESTRICTIONS PREVIOUSLY IMPOSED
EXISTING AND ALLOWED: NOT EXISTING AND NOT ALLOWED:
1. "Farmhouse" design 1. "High ranch"
2. Traditional or reproduction design 2. Split levels
3. Quality contemporary design using 3. Spanish or other traditional forms "Eclectic" designs
4. Horizontal wood siding (clapboard) 4. Vinyl siding
5. Vertical wood siding 5. Aluminum siding or trim
6. Stone or brick 6. Plywood siding
7. Architectural asphalt roofing 7. Tile roofing
8. Wood roof shingles 8. Garish colors
9. Slate roofing 9. Commercial vehicles/ boats/trailers/etc left 10. Wood windows outside
11. Muted colors/earth tones 10. Metal tool sheds
12. Three car or larger garages
13. Sensitive site planning CT Page 3018
14. Extensive landscaping
15. Wood exterior trim and detailing
APPENDIX 2
"1. No building or structure of any kind shall be erected, placed or altered upon any lots, except in conformity with plans, elevations and specifications for the exterior of said structure and the location thereof which have been approved in writing and initialed on each and every page by MATTHEWS-WESTPORT, INC., its successors and assigns, prior to submission to the Building Department or other authority for a building permit. Said plans, elevations and specifications shall include the type of materials and color on all exterior surfaces. In the event that the Building Department requires any alteration to the plans and specifications approved by the Owner, said alteration will be submitted to the Owner and must be approved by the Owner prior to commencement of any construction. In determining whether or not to approve the plans and specifications, the Owner, his designated agent or representative, shall consider whether such plans are in conformity and harmony of external design and general quality with the existing and/or proposed standards of the neighborhood, including consideration of the suitability of the proposed structure, the materials of which it is to be built, the specific location of the site upon which it is to be erected, the effect of the structure as planned on the outlook from the adjacent or neighboring property and such other factors as may be consistent with the purposes of the restriction herein contained."
"25. MATTHEWS-WESTPORT, INC., its successors or assigns, reserves the right to cancel or modify by making less restrictive any and all of the aforesaid covenants and restrictions; provided, however, that any such cancellation or modification shall thereafter become applicable to the entire premises.
"27. MATHEWS-WESTPORT, INC., its successors or assigns, shall have the right to enforce any of the foregoing covenants and restrictions. MATTHEWS-WESTPORT, INC. hereby grants the same right to enforce the foregoing covenants and restrictions to any and all persons who may own or may hereafter own property within the premises. The owner, his designated agent or representative, shall not be held responsible for the enforcement of any of the foregoing covenants or declarations, nor shall the owner, his designated agent or representative, be held liable for any damages recovered as a result of a proceeding either at law or equity against a violator of any declaration or covenant contained herein." CT Page 3019