******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MICHAEL ABEL ET AL. *v.* CELESTE M. JOHNSON
## (AC 41058)

Keller, Moll and Beach, Js.

*Syllabus*

The plaintiffs, owners of property in a subdivision, sought to enjoin the defendant abutting property owner from violating certain restrictive covenants in connection with deeds to the parties' properties. The first deed restriction, which limited the land to residential use only, was contained in a 1956 deed, whereby the original grantors conveyed the land to a housing developer, E Co. In a 1961 declaration executed by E Co., restrictions regarding the keeping of chickens and the parking of commercial vehicles were added. At trial, the defendant admitted to operating a landscaping company from her property and keeping chickens on her property, and that several vehicles on her property were used in conjunction with her landscaping business. The trial court found that the plaintiffs had standing to enforce the restrictive covenants contained in the 1956 deed and the 1961 declaration on the grounds that the parties' properties were part of a common scheme of development and both parties' deeds contained the restrictive covenants at issue. The trial court rendered judgment in favor of the plaintiffs and awarded the plaintiffs injunctive relief. On the defendant's appeal to this court, *held:*

1. The trial court improperly determined that the plaintiffs had standing to enforce the restrictive covenant in the 1956 deed that limited the use of the defendants' property for residential purposes, as there was no allegation or evidence that the plaintiffs were the original grantors of the 1956 deed or their successors in interest; the restrictive covenants set forth in the 1956 deed were expressly intended to inure to the benefit of the remaining land of the original grantors of the premises conveyed in the 1956 deed, which were subsequently conveyed to the parties, the plaintiffs had neither alleged nor proven that they were entitled to enforce the restrictive covenants at issue under a theory of mutuality of covenant and consideration, the original grantors, for their benefit, extracted covenants from the grantees of the 1956 deed, and there was no language in the deed that suggested that the restrictive covenants were intended to benefit the original or subsequent grantees of the 1956 deed, or that the original grantors were dividing their property into building lots, thereby imposing the restrictive covenants upon grantees as part of a general developments scheme, as the restrictive covenants at issue fell within the class of covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of the adjoining land that he retained.

### (*One judge dissenting*)

2. The trial court erred in awarding injunctive relief regarding the storage of the defendant's pickup truck as a commercial vehicle pursuant to a restrictive covenant contained in the 1961 declaration concerning the storage of commercial vehicles, as such relief was beyond the scope of the plaintiffs' operative complaint; although that court had denied the plaintiffs' request to amend the complaint to include a claim for relief pursuant to the restrictive covenant in the 1961 declaration concerning the storage of commercial vehicles, it expressly referred to that restrictive covenant in awarding injunctive relief, and the plaintiffs could not prevail on their claim that the relief awarded was proper because their complaint sought broad relief with respect to any type of commercial activity pursuant to the 1956 restrictive covenant limiting the use of the property for residential purposes only, this court having determined that the plaintiffs lacked standing to enforce that restriction in the 1956 deed.

3. The defendant could not prevail on her claim that the plaintiffs' action seeking injunctive relief concerning the keeping of chickens on the defendant's property was moot in light of the fact that she had removed the chickens from her property prior to the commencement of the action: although there was undisputed evidence that the chickens were no

longer present on the defendant's property, the trial court had jurisdiction to consider the claim and to afford the plaintiffs practical relief, as the defendant still owned the chickens, the coops remained on her property, the defendant previously attempted to get permission from her neighbors, as required by the restrictive covenant, to keep continue keeping the chickens on her property, and no evidence was presented to establish that she did not intend to resume the prohibited conduct in the future; moreover, the trial court erred in awarding injunctive relief that indefinitely prohibited chickens on the defendant's property, as the court's order constituted a blanket prohibition against the defendant and precluded her from availing herself of any permissible exceptions in the future, including the right, under the 1961 restrictive covenant, to periodically seek permission from her neighbors to keep chickens on her property, and, therefore, the court exceeded the scope of the restrictive covenant it purported to enforce.

Argued March 7—officially released November 5, 2019

*Procedural History*

Action for, inter alia, injunctive relief barring the defendant from violating restrictive covenants on certain of the defendant's real property, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Edward R. Karazin, Jr.,* judge trial referee; judgment for the plaintiffs, from which the defendant appealed to this court. *Reversed in part; vacated in part; judgment directed.*

*Heather M. Brown-Olsen,* for the appellant (defendant).

*John R. Harness,* for the appellees (plaintiffs).

*Opinion*

KELLER, J. In this action to enforce restrictive covenants, the defendant, Celeste M. Johnson, appeals from the judgment of the trial court, rendered following a trial to the court, in favor of the plaintiffs, Michael Abel and Carol Abel. The defendant claims that the court erred (1) in its determination that the plaintiffs had standing to enforce a restrictive covenant that appears in a deed that was executed by the original grantors of the parties' real properties[1] and (2) by granting the plaintiffs injunctive relief on the basis of two restrictive covenants that appeared in a declaration of restrictions that applied to the parties' real properties. We affirm in part and reverse in part the judgment of the trial court.

The record reveals the following procedural history. In their one count complaint, the plaintiffs alleged that they own real property located at 37 Mill Stream Road in Stamford and that the defendant owns real property located at 59 Mill Stream Road in Stamford. The plaintiffs alleged that their property abutted that of the defendant, and that both properties are located in a subdivision named the Saw Mill Association.

The plaintiffs alleged: "The plaintiffs' property and the defendant's property are subject to certain restrictive covenants recorded in volume 792 at page 118 of the Stamford land records which states that property shall be used for private residential purposes only." Also, the plaintiffs alleged: "The plaintiffs' property and the defendant's property are also subject to certain restrictive covenants recorded in volume 917 at page 114 of the Stamford land records which state in relevant part that no animals, poultry or water fowl, except usual pets quartered within the family dwelling at night shall be kept on a tract." The plaintiffs alleged that the restrictive covenants "are common to all tracts or parcels of land located within the area or subdivision known as the Saw Mill Association."

The plaintiffs further alleged: "The defendant is violating the restrictive covenants by maintaining chickens and chicken coops upon the defendant's property and by conducting a landscaping business from the defendant's property." Also, the plaintiffs alleged: "The defendant has not obtained consent from the Saw Mill Association . . . the plaintiffs or any neighboring property owner to maintain chickens upon the defendant's property or to conduct a landscaping business from the defendant's property." The plaintiffs alleged that they had demanded that the defendant cease and desist the activities at issue, but the defendant had failed to comply with their demand. The plaintiffs alleged that they had suffered and would continue to suffer irreparable harm as a result of the activities at issue, and that they lacked an adequate remedy at law. The plaintiffs sought injunctive relief ordering the defendant to immediately

cease and desist from violating the restrictive covenants and such other relief as the court deemed equitable and proper.

In her answer, the defendant admitted owning 59 Mill Stream Road, which abuts the plaintiffs' property, but she denied that she had violated any restrictive covenant by virtue of her keeping chickens or by virtue of her landscaping business, denied that she had failed to obtain consent to conduct her landscaping business, and denied that the plaintiffs had suffered harm or would continue to suffer harm as a result of her alleged violation of the restrictive covenants at issue. Otherwise, the defendant left the plaintiffs to their proof. The defendant raised four special defenses sounding in the following legal theories: (1) equitable estoppel and waiver; (2) unclean hands;[2] (3) ripeness, mootness, and frustration of purpose; and (4) a claim that the action was time barred pursuant to General Statutes § 52-575a in that the plaintiffs did not commence the action within three years from the time that they had actual or constructive knowledge of the alleged violations of the restrictive covenants. By way of a reply, the plaintiffs denied all of the special defenses.

The trial court, *Hon. Edward R. Karazin, Jr.*, judge trial referee, held a trial in this matter on June 29 and 30, 2017. On August 24, 2017, the court rendered its judgment by way of a memorandum of decision that provides, in relevant part, as follows: "The defendant . . . resides with her husband, Eusevio Martinez, at 59 Mill Stream Road, Stamford . . . . The plaintiffs . . . reside at 37 Mill Stream Road, Stamford . . . . The plaintiffs' property abuts the defendant's property, and both parcels of land are located within a subdivision known as the Saw Mill Association.

"The court finds the [plaintiffs] aggrieved as being . . . adjoining property [owners].

"Both properties are subject to three deed restrictions. The first restriction, [as modified by an agreement] dated March 27, 1957, states that 'said premises shall be used for private residential purposes only (except that a residence may be used for professional purposes by a member of a profession occupying the same as his home to the extent that such use is permitted from time to time by the applicable zoning regulations of the city of Stamford).' The second restriction is dated March 15, 1961, and states that 'no animals, poultry or water fowl, except usual pets quartered within the family dwelling at night, shall be kept on a tract.' The third restriction is also dated March 15, 1961, and states that 'any commercial vehicle used by an occupant of a tract shall be kept within a garage with doors closed, except for brief periods required for loading or unloading.'

"At trial, the defendant testified that she operates a

landscaping business from her property, that chickens were on the property but have since been removed, and that various vehicles parked on her property are used in conjunction with her landscaping business. . . .

"The plaintiff[s] [argue] that the three deed restrictions listed above are part of a common development scheme and, therefore, they are able to bring this action to enforce the restrictions against the defendant. . . .

"The defendant argues that the deed restrictions on her property are the result of covenants exacted by the original landowner from the developer of the Saw Mill Association for the benefit and protection of his adjoining land which he retains and, as a result, the [plaintiffs] cannot enforce the deed restrictions. In addition, the defendant asserts four special defenses . . . ." (Footnotes omitted.)

After setting forth relevant legal principles, the court stated: "The plaintiffs submitted multiple deeds from various properties of the Saw Mill Association that contained the restrictive covenant[s] they seek to enforce. In addition, the deeds from both parties contain the deed restrictions at issue in this case. . . . The court is satisfied that both the [plaintiffs'] and defendant's properties are part of a common scheme of development. Therefore, the plaintiffs may enforce the deed restrictions against the defendant. Without a showing by the defendant that the enforcement of those deed restrictions would be inequitable or that a special defense applies, the court will enforce the restrictions."

The court then addressed the special defenses: "The defendant argues that the plaintiffs are estopped from enforcing the restrictive covenants regarding the operation of a home business because they previously utilized services from the landscaping business. . . .

"Even if the plaintiffs hired the defendant's company in its capacity as a landscaping company, no evidence submitted at trial supports the proposition that the defendant changed her position in response to the [plaintiffs'] offer of work. Nor is there evidence that the defendant was prejudiced by accepting the work from the [plaintiffs]. . . . Therefore, the defendant has failed to prove the special defense of equitable estoppel.

"The defendant also argues that with respect to the covenant involving poultry, this action is moot and not justiciable because the chickens that were on the property have been removed prior to the start of trial. . . .

"Both parties agree that the chickens have been removed from the defendant's property. In addition, both parties agree that the chicken coops are still on the defendant's property. The defendant testified that she moved the chickens to another property she owns and does not have plans to return them to her property at 59 Mill Stream Road. Given that an injunction against the defendant regarding the enforcement of the 1961

covenant would provide practical relief to the [plaintiffs] and would resolve any ambiguity about whether the chickens could be returned to the property, this court does not find the issue moot. Therefore, the injunction regarding poultry and water fowl and the [plaintiffs'] request to order an injunction is not moot, and the defendant's special defense has not been proven.

"The defendant argues that the plaintiffs' action is barred by the three year statute of limitations provided in . . . § 52-575a. General Statutes § 52-575a provides in relevant part: 'No action or any other type of court proceedings shall be brought to enforce a private restriction recorded in the land records of the municipality [in which the property is located] . . . [unless such action or proceeding] shall be commenced within three years of the time that the person seeking to enforce such restriction had actual or constructive knowledge of such violation.' 'Section 52-575a requires that a violation occur before the statute begins to run'. . . .

"The defendant submitted evidence and elicited testimony from [the] plaintiff Michael Abel at trial which indicated that the plaintiffs had actual knowledge of the defendant's landscaping business. The defendant submitted checks dated in 2007 that the [plaintiffs] used to pay for landscaping services from the defendant. In addition, [Michael Abel] testified that he knew the defendant and her husband were attempting to start a business and hired them in order to help them with [the] financial troubles he knew they were having. If this were the only evidence and testimony relevant to the defendant's breach of the restrictive covenant involving the operation of a home business, then perhaps the statute of limitations would apply and bar the [plaintiffs'] claim.

"Instead, the defendant has been continually expanding the operations of her home business. These expansions involve deliveries of mulch, chipping tree branches, maintenance of landscaping equipment, and the parking of several employee vehicles on her property or in front of her home. The defendant put forth arguments and testimony that some of these activities are for personal use as she operates a farm at a separate location. This testimony conflicts with other testimony provided by the defendant and other witnesses, which described the expansion of the landscaping business and the increasing number of clients the defendant serves with her business. In addition, the plaintiff[s] provided testimony and a letter addressed to a neighbor from the defendant that indicated [that] the defendant was in possession of a large delivery of mulch and that she could provide mulch in conjunction with other landscaping services. These violations have taken place in the three years before this suit was brought."

After the court referred to some of the photographic evidence submitted by the plaintiffs concerning the activities that took place and equipment that was present on the defendant's property, the court stated: "The exhibits and photographs clearly show that the premises are not being solely used for residential purposes, but rather a landscaping business. The only use for the property outside of residential is for professional use by a member of a profession.

"Within the past three years, the defendant's new and expanding uses of her property in relation to her home business continue to increase beyond the simple founding of a business and operation from the home. Since these new violations of the restrictive covenant have been occurring in pursuit of expanding her home business, and continue to increase since the time that the plaintiffs originally knew about the business, their action is not time barred by § 52-575a. It would not be in the interest of justice to find that once a person violates a restrictive covenant in a minor way, and the other party does not bring suit, they can continue violating it in progressively larger ways once the statute of limitations expires. For this reason, the court does not find that the defendant has [satisfied her] burden of showing that it would be inequitable to enforce the covenant against her. Therefore, the statute of limitations special defense has not been proven.

"The plaintiff[s] [argue] that the defendant's vehicles used in connection with the landscaping business are commercial vehicles and subject to the restrictive covenant prohibiting commercial [vehicles] from being parked outside of a closed garage. The defendant argues that the vehicles are her and her husband's private vehicles that are sometimes used in connection with the business and not a commercial vehicle for the purposes of any restrictive covenant or rules of the Saw Mill Association."

Thereafter, the court found in light of the evidence and relevant law that a Dodge pickup truck that the defendant admitted was used in conjunction with her landscaping business was a commercial vehicle for purposes of the restrictive covenants.

The court found that the plaintiffs had proven the allegations set forth in their complaint and that the defendant had failed to prove her special defenses. The court ordered the following injunctive relief:

"(1) An injunction ordering the defendant to immediately cease and desist from violating the restrictive covenants;

"(2) An injunction ordering the defendant from keeping any chickens or roosters upon the defendant's property; (the defendant is not ordered to remove the chicken coops);

"(3) An injunction ordering the [Dodge pickup truck] to be kept within a garage with the doors closed except for brief periods required for loading or unloading;

"(4) An injunction ordering the defendant not to receive and/or store supplies such as mulch and sod at the defendant's property for resale to customers of the landscaping business;

"(5) An injunction ordering the defendant not to allow parking of employees or independent contractor vehicles upon the defendant's property while the employee or independent contractor is working for the landscaping business;

"(6) An injunction ordering the defendant to stop performing chipping of tree branches from the landscaping business upon the defendant's property;

"(7) An injunction ordering the defendant to stop performing repairs of equipment used in connection with the landscaping business upon the defendant's property."[3] This appeal followed.

I

First, we address the defendant's claim that the court erred in its determination that the plaintiffs had standing to enforce a restrictive covenant that appears in the 1956 deed that was executed by the original grantors of the parties' real properties. We agree with the defendant.

With respect to the restrictive covenants at issue in this appeal, the following relevant facts are not in dispute. In 1956, Horace Havemeyer and Harry Waldron Havemeyer (original grantors) conveyed to a housing developer, Empire Estates, Inc. (Empire Estates), 166.1229 acres of real property in Stamford. The deed related to this conveyance is recorded in volume 792, page 118, of the Stamford land records. In relevant part, the deed provides: "This deed is given and accepted upon the following express covenants and agreements which shall run with the land herein conveyed and shall be binding upon the grantee, its successors and assigns, and shall enure to the benefit of the remaining land of the grantors lying westerly of the premises herein conveyed:

"(1). Said premises shall be used for private residential purposes only (except that a doctor or dentist having a home on said premises may locate his office herein if such use is permitted by the applicable zoning regulations), and no buildings shall be erected or maintained upon said premises except single-family dwelling houses and appropriate outbuildings.

"(2). Said tract shall not be subdivided for building purposes into plots containing less than one (1) acre in area, and not more than one (1) such dwelling house shall be erected or maintained on any such plot."[4]

In 1961, Empire Estates, through its trustees, Harry E. Terhune and Gordon R. Patterson, executed a declaration of restrictions (declaration) that was recorded in volume 917, page 114, of the Stamford land records. The declaration, which included thirty-five articles and set forth a wide variety of restrictions, did not contain a provision restricting the applicable tracts to private residential use only. In relevant part, the declaration states: "Witnesseth, that said trustees hereby place upon the land records the following restrictions, covenants, agreements, reservations, easements and information which shall govern the use of any tract of land whenever imposed in a deed of conveyance, by reference to this declaration, from any person or corporation authorized by either of the said trustees or their successors, by instrument recorded in the land records, to impose the terms hereof on portions of the land owned by such person or corporation and shall run with the land so conveyed and shall enure to the benefit of the owners of tracts of land affected by the terms hereof, to the person or corporation authorized to impose the terms hereof and, where applicable, to the municipality . . . ."

Article 2 of the declaration provides: "No animals, poultry or water fowl, except usual pets quartered within the family dwelling at night, shall be kept on a Tract.[5] Exceptions to this provision may be made for not over two year periods if consented to in writing by the Purchaser[6] of each Tract within two hundred (200) feet of the Tract where the exception is proposed." (Footnotes added.)

Article 8 of the declaration provides: "Any commercial vehicle used by an occupant of a Tract shall be kept within a garage with doors closed, except for brief periods required for loading or unloading."

The final article of the declaration, Article 35, provides in relevant part: "The intent of this Declaration is to protect property values. Developer[7] intends to enforce the provisions of this Declaration whenever it feels its interest may be threatened. Enforcement action may be taken, with or without Developer's participation, by any aggrieved Purchaser of a Tract, or by any group of aggrieved Purchasers represented by a Property Owner's Association, or otherwise.

"Enforcement of this Declaration or any part thereof shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any right herein contained, and said proceedings may be either to restrain any violation thereof, to recover damages therefor, or to require corrective measures to accomplish compliance with the intent of this Declaration." (Footnote added.)

The deed conveying the property known as 37 Mill Stream Road to the plaintiffs, which was recorded on

September 26, 1977, in volume 1680, page 100, of the Stamford land records, provides in relevant part: "Said premises are conveyed subject to any restrictions or limitations imposed or to be imposed by governmental authority, including the zoning and planning and wetlands rules and regulations of the City of Stamford; restrictive covenants and agreements contained in a certain deed from Harry Waldron Havemeyer et al to Empire Estates, Incorporated dated August 14, 1956 and recorded in said records in Book 792 at Page 118, as modified by an agreement dated March 27, 1957 and recorded in said records in Book 808 at Page 355; a declaration made by Harry E. Terhune and Gordon R. Paterson, as trustees, dated March 15, 1961 and recorded in said records in Book 917 at Page 114 . . . ."

Materially similar language appears in the defendant's chain of title as well.[8] In a deed conveying the property known as 59 Mill Stream Road and recorded on September 30, 1983, in volume 2296, page 146, of the Stamford land records, the following language appears: "Said premises are conveyed subject to planning and zoning rules and regulations of the City of Stamford and any other Federal, State or local regulations, taxes and assessments of the City of Stamford becoming due and payable hereinafter, restrictive covenants and agreements as contained in a deed from Harry Waldron Havemeyer, et al to Empire Estates, Incorporated dated August 14, 1956 and recorded in the land records of said Stamford in book 792 at page 118, except as the same are modified by an agreement dated March 27, 1957 and recorded in said records in book 808 at page 355, the terms of a declaration made by Harry E. Terhune and Gordon R. Patterson, as Trustees, dated March 14, 1961 and recorded in said records in book 917 at page 114, the rights of others, including the City of Stamford, in and to any brook, river, stream or water flowage easement crossing and bounding said tract of land." This 1983 deed is referred to in the 2006 deed conveying the property to the defendant, which is recorded in volume 8602, page 54, of the Stamford land records.

Having set forth some relevant facts, we turn to the defendant's claim with respect to standing. As set forth previously in this opinion, the court concluded that the plaintiffs had standing to enforce the restrictive covenant in the 1956 deed related to commercial activity, as well as the restrictions set forth in the 1961 declaration concerning the keeping of chickens and the parking of commercial vehicles. The court ruled that the plaintiffs had standing to enforce all of these restrictions because the parties' properties were "part of a common scheme of development" and "the deeds from both parties contain the deed restrictions at issue in this case." The court rejected not only the defendant's special defenses, but her jurisdictional argument that the plaintiffs lacked standing to enforce the restriction

in the 1956 deed from the original grantors to Empire Estates, the developer of the properties that are now owned by the plaintiffs and the defendant. As stated previously, the 1956 deed restriction at issue, as modified in 1957, limits the subject premises to "private residential purposes only . . . ."

Echoing the arguments she advanced before the trial court, the defendant claims that the court improperly concluded that the plaintiffs had standing to enforce the restrictive covenant in the 1956 deed, as modified in 1957, which generally prohibits commercial activity on the property. The defendant argues that the restrictive covenant in the 1956 deed, by its terms, inured to the benefit of the *original grantors*, *Horace Havemeyer and Harry Waldron Havemeyer, and their successors*, not to the plaintiffs. Moreover, the defendant argues that the court erroneously determined that the plaintiffs could enforce the restrictive covenant in the 1956 deed because the parties' properties were part of a common scheme of development. We note that the defendant does not dispute that the plaintiffs had standing to enforce the restrictive covenants that appear in the 1961 declaration, which, thereafter, were imposed on the original grantees of the parties' properties when Empire Estates conveyed its interests in individual tracts to such grantees.

"If a party is found to lack standing, the court is without subject matter jurisdiction to hear the case. Because standing implicates the court's subject matter jurisdiction, the plaintiff ultimately bears the burden of establishing standing. A trial court's determination of whether a plaintiff lacks standing is a conclusion of law that is subject to plenary review on appeal. We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Success, Inc.* v. *Curcio*, 160 Conn. App. 153, 162, 124 A.3d 563, cert. denied, 319 Conn. 952, 125 A.3d 531 (2015).

To the extent that the standing issue requires us to construe language found in deeds, we observe that

"[t]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is . . . plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences." (Internal quotation marks omitted.) *Avery* v. *Medina*, 151 Conn. App. 433, 440–41, 94 A.3d 1241 (2014).

Generally, "restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains." (Internal quotation marks omitted.) *Bueno* v. *Firgeleski*, 180 Conn. App. 384, 393–94, 183 A.3d 1176 (2018).

"In the first class [of restrictive covenants] either party or his assigns may enforce the restriction because there is a mutuality of covenant and the rights are reciprocal." *Stamford* v. *Vuono*, 108 Conn. 359, 364, 143 A. 245 (1928). There is no dispute that the restrictive covenant at issue in the 1956 deed, which is not a mutual covenant entered into by adjoining landowners, does not fall within the first class of restrictive covenants.

"With respect to the second class of covenants, any grantee under such a general or uniform development scheme may enforce the restrictions against any other grantee." (Internal quotation marks omitted.) *Cappo* v. *Suda*, 126 Conn. App. 1, 4, 10 A.3d 560 (2011). "In the second class [of restrictive covenants], upon the same theory of mutuality of covenant and consideration [that applies when there are mutual covenants between owners of adjoining lands], any grantee may enforce the restriction against any other grantee." *Stamford* v. *Vuolo*, supra, 108 Conn. 364. "The factors that help to establish the existence of an intent by a grantor to develop a common plan are: (1) a common grantor sells or expresses an intent to put an entire tract on the market subject to the plan; (2) a map of the entire tract exists at the time of the sale of one of the parcels; (3) actual development according to the plan has occurred; and (4) substantial uniformity exists in the restrictions imposed in the deeds executed by the grantor. . . .

"The factors that help to negate the presence of a development scheme are: (1) the grantor retains unrestricted adjoining land; (2) there is no plot of the entire tract with notice on it of the restrictions; and (3) the common grantor did not impose similar restrictions on other lots. . . .

"Early Connecticut case law acknowledges the power of property holders with substantially uniform restrictive covenants obtained by deeds in a chain of title from a common grantor to enforce the restrictions against other owners with similar restrictive covenants. When, under a general development scheme, the owner of property divides it into building lots to be sold by deeds containing substantially uniform restrictions, any grantee may enforce the restrictions against any other grantee. . . .

"When making a finding as a matter of law that a common development scheme exists, courts look to four factors: (1) the common grantor's intent to sell all of the subdivided plots; (2) the existence of a map of the subdivision; (3) actual development of the subdivision in accordance with the general scheme; and (4) substantially uniform restrictions contained in the deeds of the subdivided plots." (Citations omitted; internal quotation marks omitted.) *DaSilva* v. *Barone*, 83 Conn. App. 365, 371–73, 849 A.2d 902, cert. denied, 271 Conn. 908, 859 A.2d 560 (2004).

"With respect to the third class of covenants, the original grantor, who is the owner of the property benefited, and his assigns may enforce [the covenant] against subsequent purchasers of the property burdened. If the restrictive covenant is for the benefit of the remaining land of the grantor, it is an easement running with the land and may be enforced by a subsequent purchaser of the remaining land against the prior grantee and his successors in title . . . ." (Internal quotation marks omitted.) *Bueno* v. *Firgeleski*, supra, 180 Conn. App. 394. "In the third class [of restrictive covenants], there is no mutuality between the grantees, if there are more than one, and therefore no right in one grantee to enforce the restrictions against another grantee upon [the theory of mutuality of covenant and consideration]." *Stamford* v. *Vuolo*, supra, 108 Conn. 365.

"[W]hen presented with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless the defendant can show that enforcement would be inequitable." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 139, 475 A.2d 305 (1984); *Grady* v. *Schmitz*, 16 Conn. App. 292, 301–302, 547 A.2d 563 (same), cert. denied, 209 Conn. 822, 551 A.2d 755 (1988). Restrictive covenants, by their nature, are in derogation of the common-law right to use land for all lawful purposes that go with title and possession. See *Pulver* v. *Mascolo*, 155 Conn. 644, 649, 237 A.2d 97 (1967); *Neptune Park Assn* v. *Steinberg*, 138 Conn. 357, 361, 84 A.2d 687 (1951). Accordingly, "[a] restrictive covenant must be narrowly construed and ought not to be extended by implication. . . . Moreover, if the covenant's language is ambiguous, it should be construed against rather than in favor of the covenant." (Citation omitted; internal quotation marks omitted.) *Morgenbes-*

*ser* v. *Aquarion Water Co. of Connecticut*, 276 Conn. 825, 829, 888 A.2d 1078 (2006); see also *Bueno* v. *Firgeleski*, supra, 180 Conn. App. 411 (same); *Alligood* v. *LaSaracina*, 122 Conn. App. 479, 482, 999 A.2d 833 (2010) (same).[9]

Having narrowed the nature of the claim before us and having set forth the relevant legal principles, we turn to the restrictive covenant at issue in the 1956 deed. As we have explained previously, the 1956 deed, executed by the original grantors, set forth two restrictive covenants, one of which limited the land conveyed by the deed to private residential use. The following language precedes reference to the two restrictive covenants: "This deed is given and accepted upon the following express covenants and agreements which shall run with the land herein conveyed and shall be binding upon the grantee, its successors and assigns, *and shall enure to the benefit of the remaining land of the grantors lying westerly of the premises herein conveyed* . . . ." (Emphasis added.)

As the emphasized language reflects, the restrictive covenants set forth in the 1956 deed were expressly intended to inure to the benefit of the remaining land of the original grantors that lies west of the premises conveyed in the 1956 deed. The premises conveyed included tracts that were subsequently conveyed to the plaintiffs and the defendant. The plaintiffs have neither alleged nor proven that they are entitled to enforce the restrictive covenant at issue under a theory of mutuality of covenant and consideration. In the present case, the original grantors, for their benefit, extracted covenants from the grantees of the 1956 deed. Nothing in the unequivocal language of the deed either suggests that the restrictive covenant at issue was intended to benefit the original or subsequent *grantees* of the 1956 deed, or that the original grantors were dividing their property into building lots, thus imposing the restrictive covenant upon grantees as part of a general development scheme. Instead, the covenants unmistakably fall within the class of "covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains." (Internal quotation marks omitted.) *Bueno* v. *Firgeleski*, supra, 180 Conn. App. 394.

Because there is no allegation or evidence that the plaintiffs are the original grantors of the 1956 deed, or their successors in interest, we conclude that they lacked standing to enforce the restrictive covenant in the deed that limited the use of the defendant's property to residential purposes.[10] Accordingly, we conclude that the court lacked subject matter jurisdiction over this claim and should have dismissed the plaintiffs' cause of action to the extent that they sought to enforce this restrictive covenant.

II

Next, the defendant claims that the court erred by granting the plaintiffs injunctive relief on the basis of restrictive covenants that appear in the declaration of restrictions that applies to the parties' real properties. We agree.

Having concluded in part I of this opinion that the plaintiffs lacked standing to enforce the restrictive covenant at issue in the 1956 deed, on which the plaintiffs expressly rely, we turn our analysis to the propriety of the relief afforded to the plaintiffs by the court in enforcing the restrictive covenant at issue contained in Article 2 and Article 8 of the 1961 declaration. As stated in part I of this opinion, the defendant acknowledges before this court that the plaintiffs have the right to enforce the restrictive covenants codified in the declaration. Indeed, in Article 35 of the declaration, that right is expressly conveyed on every aggrieved purchaser of a tract of land on which the declaration has been imposed, a class of persons that includes the plaintiffs.

A

Although the defendant acknowledges that the plaintiffs may enforce the restrictive covenants set forth in the declaration, the defendant argues that, in awarding the plaintiffs injunctive relief regarding the Dodge Ram pickup truck, the court improperly afforded the plaintiffs relief under Article 8 of the declaration because the operative complaint did not set forth a claim for relief under this portion of the declaration. The defendant correctly observes that, in their operative complaint, the plaintiffs relied, first, on the restriction in the 1956 deed limiting the use of the property to residential purposes and, second, the restriction in Article 2 of the declaration related to the presence of "animals, poultry, or water fowl," but not the restriction in the declaration, in Article 8, related to the presence of commercial vehicles. In both her principal and reply briefs before this court, the defendant argues that the court improperly relied on, and granted the plaintiffs relief under, Article 8 in light of the fact that the plaintiffs sought to amend their complaint to include a claim for relief under Article 8 but were denied permission to do so.

The record further reflects that, on May 11, 2017, the plaintiffs filed a request for leave to file an amended complaint. Among the amendments sought by the plaintiffs, in count one, was to rely on and obtain relief with respect to the restrictive covenant in Article 8 of the declaration, which states "that any commercial vehicles used by an occupant of a tract shall be kept within a garage with doors closed except for brief periods for loading or unloading." Additionally, the plaintiffs sought to add a second count in which they sought injunctive relief to restrain the defendant from violating the Stamford zoning regulations by operating a landscaping business from her property. The court, *Povodator, J.*, sus-

tained the defendant's written objections to the request for leave to amend.

Following the trial, the defendant filed proposed orders that were based on the complaint dated June 29, 2016, not the proposed revised complaint. In a motion for reconsideration of the court's denial of the defendant's motion to reargue and/or to reconsider its ruling, which the court denied, the defendant argued that the plaintiffs' attempt to enforce the restriction in the declaration related to commercial vehicles was time barred, yet also stated, in relevant part, that the court had denied the plaintiffs' "eleventh hour move" seeking to amend their complaint.

In this appeal, the plaintiffs have not filed a cross appeal to raise a claim of error related to the court's ruling denying their request to amend their complaint. Evidence concerning the Dodge Ram pickup truck was presented at trial by the plaintiffs and, in general terms, they attempted to demonstrate that because it was used in connection with the defendant's landscaping business, it was a commercial vehicle that needed to be stored in a garage. Presently, the plaintiffs argue that the relief afforded to them with respect to the Dodge Ram pickup truck, however, is not necessarily related to the restrictive covenant in Article 8 of the declaration. They argue that the defendant interprets the operative complaint, which the plaintiffs were not permitted to amend, too narrowly. The plaintiffs further argue that it is of no consequence that they failed in their complaint to specifically allege that they sought to restrict the defendant's storage of commercial vehicles, including the Dodge Ram pickup truck that was the subject of injunctive relief granted to them, or that they did not therein refer explicitly to the restrictive covenant in Article 8 of the declaration. The plaintiffs reason that because they plainly sought in their complaint to enforce the restrictive covenant in the 1956 deed, which restricted the defendant to use her property for residential purposes only, the defendant had sufficient notice that the plaintiffs were seeking relief with respect to *any* type of commercial activity, including the keeping of commercial trucks used in connection with the defendant's landscaping business, such as the Dodge Ram pickup truck. As the plaintiffs argue, "[t]he complaint gave sufficient notice that the defendant would have to cease all commercial activity on the property and comply with the restrictive covenants. Therefore, it would be improper for this court to reverse the judgment based on some sort of late claimed surprise to the defendant or a hyper technicality as to the pleadings."

With respect to this issue, the plaintiffs seem to overlook the significance of the fact that, in its memorandum of decision, the court expressly referred to the restrictive covenant set forth in Article 8 of the declaration and found that "the Dodge pickup truck is a commercial

vehicle under the restrictive covenant." We observe that "[t]he principle that a plaintiff may rely only upon what [it] has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint. . . . What is in issue is determined by the pleadings and these must be in writing. . . . Once the pleadings have been filed, the evidence proffered must be relevant to the issues raised therein. . . . In other words, [a] plaintiff may not allege one cause of action and recover upon another. . . . Indeed, [a] judgment upon an issue not pleaded would not merely be erroneous, but it would be void." (Citations omitted; internal quotation marks omitted.) *Watson Real Estate, LLC* v. *Woodland Ridge, LLC*, 187 Conn. App. 282, 298, 202 A.3d 1033 (2019).

To the extent that the court ordered injunctive relief pertaining to the Dodge Ram pickup truck that was, as the plaintiffs suggest, the result of the court's enforcement of a restrictive covenant in the 1956 deed, we conclude for the reasons set forth in part I of this opinion that the plaintiffs lacked standing to enforce such restrictive covenant and, thus, such relief was improper because it flowed from a claim over which the court lacked subject matter jurisdiction. To the extent that the court awarded injunctive relief pertaining to the pickup truck because it was enforcing the restrictive covenant set forth in Article 8 of the declaration, which specifically governs commercial vehicles, such relief was improper because it was premised on a claim that was not properly before the court.[11]

B

We next address the defendant's argument that the relief afforded to the plaintiffs with respect to the keeping of chickens was improper. We agree.

The following facts are relevant to this claim. As set forth previously in this opinion, Article 2 of the declaration provides: "No animals, poultry or water fowl, except for usual pets quartered within the family dwelling at night, shall be kept on a Tract. Exceptions to this provision may be made for not over two year periods if consented to in writing by the Purchaser of each Tract within two hundred (200) feet of the Tract where the exception is proposed."

In its decision, the court observed that the defendant claimed, by way of special defense, that the plaintiffs' claim for enforcement of the restrictive covenant concerning chickens on her property was moot because, prior to trial, she removed the chickens from her property. The court stated: "Both parties agree that the chickens have been removed from the defendant's property. In addition, both parties agree that the chicken coops are still on the defendant's property. The defendant testified that she moved the chickens to another property she owns and does not have any plans to

return them to her property at 59 Mill Stream Road. Given that an injunction against the defendant regarding the enforcement of the 1961 covenant would provide practical relief to the [plaintiffs] and would resolve any ambiguity about whether the chickens could be returned to the property, this court does not find the issue moot." Among its orders, the court set forth the following: "An injunction ordering the defendant from keeping any chickens or roosters upon the defendant's property; (the defendant is not ordered to remove the chicken coops) . . . ."

The defendant raises two distinct arguments with respect to the injunctive relief afforded the plaintiffs that applied to the defendant's keeping of chickens or roosters on her property. First, the defendant claims that the court improperly rejected her special defense that the cause of action, insofar as it was based on her keeping of chickens on her property, was rendered moot in light of the undisputed fact that she had removed the chickens from her property prior to the trial. Second, the defendant claims that, even if the issue was justiciable, the court lacked the authority to prohibit her from keeping chickens on her property *forever*, because such order exceeded the scope of the restrictive covenant set forth in Article 2 of the declaration. We address each argument in turn.

1

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the trial] court cannot grant . . . any practical relief through its disposition of the merits . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Valvo* v. *Freedom of Information Commission*, 294 Conn. 534, 540–41, 985 A.2d 1052 (2010); see also *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 523, 187 A.3d 1154 (2018) (discussing justiciability). "[I]t is not the province of [the] courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . When . . . events have occurred that preclude [the] court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362,

366, 957 A.2d 821 (2008). "[B]ecause an issue regarding justiciability raises a question of law, our appellate review is plenary." *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 569, 858 A.2d 709 (2004).

In a special defense, the defendant alleged in relevant part, as follows: "(1) On April 6, 2016, the Saw Mill [Association] Board of Directors sent a letter to the defendant signed by Julie Hollenberg, President of the Saw Mill Association.

"(2) The letter directed the defendant to obtain necessary consents from abutting neighbors within 200 feet [of her property] and, if unable to do so, to remove the 'chickens' from [the] defendant's property.

"(3) The defendant did not obtain consent from all neighbors within 200 feet.

"(4) In response to the letter [from] the Saw Mill Association, the defendant has relocated the chickens or any other fowl to another location in the state of Connecticut.

"(5) There are no 'chickens' or other fowl on the defendant's property. The restrictive covenant does not prohibit chicken coops from being on the defendant's property.

"(6) The plaintiffs may not claim that they are entitled to injunctive relief and allege irreparable harm when, in fact, the defendant removed the chickens or other fowl from her property as directed by the Saw Mill Association."

As the court observed in its memorandum of decision, it was not disputed at trial that, prior to the time of trial, the defendant had removed all chickens, but not the chicken coops, from her property at 59 Mill Stream Road. In relevant part, Hollenberg, one of the parties' neighbors and a member of the board of the Saw Mill Association, testified at trial that, in 2016, she became aware of complaints by some of the defendant's neighbors about the fact that the defendant was keeping chickens on her property. Hollenberg raised the issue before the board and spoke with the defendant, who indicated that she had been unaware of the prohibition in Article 2 of the declaration but, after learning of the complaints, had attempted to obtain the necessary permission from her neighbors to continue to keep the chickens on her property in accordance with Article 2. The defendant, however, was unable to obtain the consent of all neighbors. Hollenberg testified that, in her conversations with the defendant concerning the issue, the defendant did not resist her efforts to address the problem and that, after she sent the defendant an "official correspondence" from the board asking her to remove the chickens, the defendant was "very compliant" about doing so.

At trial, the defendant testified that, in either September or October of 2016, she removed the chickens,[12] which had been kept in chicken coops, from her property at 59 Mill Stream Road. She testified, however, that the coops, which were built by her husband, are still present on the property. The defendant testified, as well, that after she had discussed the matter with Hollenberg and was unable to secure permission to keep the chickens on her property in accordance with Article 2 of the declaration, she took immediate action by building a new enclosure for the chickens and moving them to a separate farm that she owns in Connecticut.

At the time of trial, the defendant relied on the fact that the chickens were no longer present on the property. The plaintiffs argued that, although the chickens had been relocated by the defendant to her farm and the violation of the restrictive covenant was limited to the presence of the chickens, but not the presence of the chicken coops, the continued presence of the chicken coops on the defendant's property posed a "threat" that the defendant could bring the chicken coops back to her property at any time. The plaintiffs argued "[t]here's no other use for those chicken coops, there's been no testimony in that regard."

We observe that the plaintiffs did not bring a declaratory judgment action pursuant to Practice Book § 17-55 to seek resolution of an ongoing dispute between the parties related to the presence of chickens on the defendant's property. Rather, in their prayer for relief in this action to enforce restrictive covenants, the plaintiffs asked for "[a]n injunction ordering the defendant to immediately remove the chickens and chicken coops from the defendant's property . . . ." Article 35 of the declaration afforded the plaintiffs, as "aggrieved Purchaser[s] of a Tract," the right to enforce the declaration against "any person or persons violating or attempting to violate any right herein contained . . . ."

In its decision, the court acknowledged that the chickens were no longer present at 59 Mill Stream Road but reasoned that enforcing the restrictive covenant in Article 2 of the declaration "would provide practical relief to the [plaintiffs] and would resolve any ambiguity about whether the chickens could be returned to the property . . . ."[13] Thereafter, the court afforded the plaintiffs relief by prohibiting the defendant from keeping any "chickens or roosters" on her property.

Presently, the defendant argues that the court improperly failed to conclude that the issue concerning chickens was moot. She states: "[The defendant] removed the chickens from her property when she was not able to obtain written permission from her neighbors within 200 feet of her property to keep the chickens. [The defendant] began the process of relocating the chickens to her upstate farm before this action

was commenced and finished the process [at] least six months before the trial commenced. [The defendant] kept the chicken coops but got rid of the chickens. Her husband built the chicken coops and [the defendant] believed that they could be put to other uses on her property." Additionally, the defendant argues that "[t]he trial court had no authority to grant injunctive relief against [her] when, in fact, there were no chickens to be removed from the property."

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a . . . court of its power to determine the legality of the practice, because, [i]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his [or her] old ways. . . . The voluntary cessation exception to the mootness doctrine is founded on the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior. . . . Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent, and a case becomes moot only if subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. . . . The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." (Citations omitted; internal quotation marks omitted.) *Boisvert* v. *Gavis*, 332 Conn. 115, 139, A.3d (2019); see also *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 281, 933 A.2d 256 (2007) (relying on fact that defendant had "not alleged, much less established, that it does not intend to resume" activity at issue in concluding that voluntary cessation of activity did not render claim moot).

Although the court did not expressly consider whether the defendant, who asserted the issue of mootness, had satisfied her heavy burden of demonstrating that subsequent events made it *absolutely clear* that the conduct at issue could not reasonably be expected to recur, we readily conclude that evidence of such a nature was lacking. To be sure, there was evidence that the defendant relocated her chickens once she was informed that some of her fellow neighbors in the Saw Mill Association raised a complaint that her conduct violated Article 2 of the declaration. However, the defendant's testimony reflects that she still possesses chickens at her farm in Connecticut and that the coops in which the chickens were kept remain on her property at 59 Mill Stream Road. Furthermore, the evidence is not in dispute that, in response to the complaints of some of her neighbors, the defendant attempted to obtain the permission required by Article 2 to continue to keep the chickens at 59 Mill Stream Road. There is no evidence of subsequent events that make it unreasonable to expect the prohibited conduct to recur, and

we observe that the defendant has neither alleged nor presented evidence to establish that she does not intend to resume the prohibited conduct in the future.

In light of the foregoing, we conclude that although there was undisputed evidence that the chickens were no longer present on the defendant's property, the court had jurisdiction to consider the claim and afford the plaintiffs practical relief in connection with this aspect of their complaint.

2

Next, we address the defendant's argument that, in prohibiting the defendant "from keeping any chickens or roosters upon the defendant's property," the court exceeded the scope of the restrictive covenant it purported to enforce. We observe, once again, that, apart from arguing that the plaintiffs' claim for relief under Article 2 of the declaration was moot, the defendant does not argue that the court improperly enforced the restrictive covenant in Article 2 but, rather, that the court's order of injunctive relief was overbroad.

As we explained previously in part I of this opinion, this court's interpretation of the language of the declaration presents a question of law over which we exercise plenary review. *Avery* v. *Medina*, supra, 151 Conn. App. 440–41. Here, the plain language of Article 2 of the declaration unambiguously provides an exception to the prohibition for keeping animals, poultry, or water fowl that are not quartered within a family dwelling at night. The declaration provides: "*Exceptions to this provision may be made for not over two year periods if consented to in writing by the Purchaser of each Tract within two hundred (200) feet of the Tract where the exception is proposed.*" (Emphasis added). The court's order constituted a blanket prohibition against the defendant and, as she argues, precludes her from availing herself of any permissible exceptions in the future, as is her right. For this reason, we conclude that the court's broad award of injunctive relief with respect to the keeping of chickens on the defendant's property exceeds the plaintiffs' rights under the declaration, to the defendant's detriment. Although we affirm the judgment of the trial court enforcing Article 2 of the declaration, the proper remedy for the error in the court's order of injunctive relief is to vacate the court's order of injunctive relief prohibiting the defendant from keeping *any* chickens or roosters on her property at 59 Mill Stream Road, and to direct the court to fashion an appropriate order that is consistent with Article 2 of the declaration, as interpreted in this opinion.

The judgment enforcing the restrictive covenants is reversed to the extent that the court enforced a restrictive covenant that appears in the 1956 deed and the restrictive covenant that appears in Article 8 of the declarations. The orders of injunctive relief related to

these restrictive covenants (orders 1, 3, 4, 5, 6, and 7) are vacated. The judgment enforcing the restrictive covenant that appears in Article 2 of the declaration, relating to the keeping of "animals, poultry or water fowl," is affirmed, but the order of injunctive relief prohibiting the defendant from keeping any chickens or roosters on her property (order 2) is vacated and the case is remanded to the trial court with direction to order appropriate relief that is consistent with Article 2 of the declaration.

In this opinion MOLL, J., concurred.

[1] We note that the defendant raised three distinct claims on appeal. The first claim that we analyze in this appeal, which concerns the issue of standing, encompasses the issues raised in the first two claims that are set forth in the defendant's brief. These claims are (1) whether the court properly concluded that the plaintiffs had "standing to enforce a private deed restriction that was expressly stated to inure to the benefit of the retained land of the grantor" and (2) whether, in determining that the plaintiffs had standing to enforce the restrictive covenants in the deed, the court properly concluded "that the deed restrictions at issue in this case were collectively part of a common plan of development . . . ."

[2] At trial, the defendant abandoned the special defense of unclean hands.

[3] After it rendered judgment in the plaintiffs' favor, the court granted a motion to stay the judgment pending the outcome of the present appeal. Also, the court denied a motion to open the judgment filed by the defendants.

[4] In 1957, an agreement between the original grantors, Empire Estates, and Country Lands, Inc., to whom a portion of the land at issue had been conveyed by Empire Estates, was recorded in volume 808, page 355, of the Stamford land records. Although it does not affect our analysis of the present claim, we observe that the agreement modified the first restrictive covenant in the 1956 deed, set forth previously, as follows: "[T]hat portion of [the] restrictive covenant . . . which is contained within parenthesis shall be of no further force and effect and there shall be substituted in lieu of the language contained within parenthesis, effective from the date hereof, the following language: (except that a residence may be used for professional purposes by a member of a profession occupying the same as his home to the extent that such use is permitted from time to time by the applicable zoning regulations of the city of Stamford)."

[5] The declaration defines a "Tract" as "[a] parcel of land shown and delineated on a map filed in the land records of the MUNICIPALITY which has been conveyed by the DEVELOPER to a PURCHASER."

[6] The declaration defines a "Purchaser" as "[a]ny Purchaser of a TRACT upon which this Declaration has been imposed, and his, her or its successors in title."

[7] The declaration defines a "Developer" as "[t]he person or corporation authorized by either of the trustees executing this Declaration or their successors to make subject to this Declaration any property conveyed by said person or corporation."

[8] It does not appear to be in dispute that the parties' properties are located in the Saw Mill Association, a "neighborhood association" that encompasses 142 properties on eight contiguous streets in Stamford. The plaintiffs presented evidence that the restrictive covenants that appear in the chain of title of the parties' properties are found in the chain of title of several other property owners in the Saw Mill Association.

[9] The dissenting opinion cites to *Contegni* v. *Payne*, 18 Conn. App. 47, 52, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989), in support of the principle that property owners have an equitable right to enforce against other property owners restrictions that are imposed as part of a uniform development plan. According to the dissent, "[r]egardless of the genesis" of the restrictive covenant at issue in the present case, equity favors the plaintiffs' ability to enforce it. For several reasons, we disagree with this rationale. In light of the principles cited previously, we are mindful that courts must not extend restrictive covenants by implication. Regardless of Empire Estate's intent, it is undisputed that it failed to include the restriction at issue in its lengthy declaration that applied to the properties in the subdivision. Instead, in the deeds conveying tracts to the parties' predecessors in title, Empire Estates referred to the fact that the tracts were "subject

to" the restrictive covenant that appeared in the deed from the original grantor. It is noteworthy that, in the parties' deeds, Empire Estates also referred to the fact that the tracts were "subject to" a variety of additional restrictions or limitations, including but not limited to those which could be imposed by governmental authority, zoning regulations, city regulations, taxes, and easements. Certainly, despite the fact that these additional restrictions or limitations might apply with equal force to the parties and others in their subdivision, it cannot reasonably be suggested that the plaintiffs have the right to enforce them.

[10] The dissenting opinion states that *Maganini* v. *Hodgson*, 138 Conn. 188, 192–93, 82 A.2d 801 (1951); *Mellitz* v. *Sunfield Co.*, 103 Conn. 177, 182, 129 A. 228 (1925); *Prime Locations of CT, LLC* v. *Rocky Hill Development, LLC*, 167 Conn. App. 786, 796 n.10, 145 A.3d 317, cert. denied, 323 Conn. 935, 150 A.3d 686 (2016); and *5011 Community Organization* v. *Harris*, 16 Conn. App. 537, 540, 548 A.2d 9 (1988); support the conclusion that because the covenant limiting the use of the property for residential purposes was part of a general development scheme, the plaintiffs had the right to enforce it against the defendant. Respectfully, we believe that the cases cited by the dissent broadly apply to restrictions that are imposed as a *uniform scheme of development*, the very fact that has not been established by the facts in the present case. Further, we believe that the cases cited differ materially from the facts at issue in the present case and, thus, do not support the conclusion that the covenant at issue in the present case is enforceable by the plaintiffs against the defendant.

In *Maganini*, the original grantor of property included a restrictive covenant limiting the use of the property for residential purposes in the deed conveying the property to a developer who subsequently conveyed it by deed to the parties in *Maganini. Maganini* v. *Hodgson*, supra, 138 Conn. 190. There is no indication, however, that the original grantor included this covenant for its benefit. The court explained: "The tract was originally deeded to the developer restricted to residential purposes. He put a map on record showing its subdivision. In his first deed [to one of the plaintiffs in *Maganini*], he expressly obligated himself to impose on his remaining land *and recited the restrictions which were repeated in later deeds, in many respects verbatim.* The [trial] court was fully justified in concluding that a uniform plan or scheme existed." (Emphasis added.) Id., 193. Our Supreme Court observed that, in a situation involving "a general development scheme, [in which] the owner of property divides it into building lots to be sold *by deeds containing substantially uniform restrictions*, any grantee may enforce the restrictions against any other grantee." (Emphasis added; internal quotation marks omitted.) Id., 192. In the present case, in deeds to subsequent tract owners, the developer referred to restrictions that expressly inured to the benefit of the original grantor, which restrictions appeared in the deed conveying the property from the original grantor to the developer.

In *Mellitz*, an original grantor conveyed property to a developer by means of a deed that contained a restrictive covenant that, by its terms, ran with the land and was "enforceable at law and equity by the grantor herein named *or by the owner at any time of any portion of said premises.*" (Emphasis added; internal quotation marks omitted.) *Mellitz* v. *Sunfield Co.*, supra, 103 Conn. 179. In light of this language in the deed, our Supreme Court relied on the fact that the restrictions that appeared in the deed between the original grantor and the developer "were for the common benefit of all subsequent lot owners in the tract conveyed." Id., 182. As we have discussed previously in this opinion, the restrictive covenant at issue in the present case expressly inured to the benefit of the original grantor and not to any grantee of the deeded property.

Although *5011 Community Organization* did not involve a claim that a party lacked standing to enforce a covenant in a deed, this court observed that the covenant at issue in that case was included in a majority of the deeds in a subdivision and was part of a common plan of development. *5011 Community Organization* v. *Harris*, supra, 16 Conn. App. 540. This court stated: "The trial court concluded, and we agree, that the restrictions on the subdivision were created to benefit the lot owners. Thirty-seven of the forty-four lots comprising the subdivision contained similar restrictions. Moreover, there was no evidence that [the original grantor] intended to retain ownership of any part of the tract. It is clear that there was a common scheme of development in the original subdivision." Id., 540. In the present case, the original grantor retained a portion of the tract of property conveyed to the developer and expressly stated that the restrictive covenant at issue benefitted the original grantor, not the lot owners. Moreover, unlike the

present case, it appears that the covenants at issue in *5011 Community Organization* contained restrictions, not merely reference to restrictions that appeared in the deed conveying the property to the developer.

Finally, the relevant issue of standing in *Prime Locations of CT, LLC*, required this court to determine whether, under a declaration that was a common scheme of development, individual lot owners had standing to enforce restrictions against other lot owners. *Prime Locations of CT, LLC* v. *Rocky Hill Development, LLC*, supra, 167 Conn. App. 794. In the present case, the restriction sought to be enforced by the plaintiffs against the defendant *does not appear* in the declaration of restrictions that was expressly referred to and incorporated by reference in the parties' deeds from the developer.

[11] Additionally, the defendant argues that the court failed to expressly resolve the issue of whether her special defense, based on the three year statute of limitations set forth in § 52-575a, defeated any claim related to the presence of the Dodge Ram pickup truck. According to the defendant, the evidence was uncontroverted that the truck was present on her property for more than three years prior to the time that the plaintiffs commenced the present action and, thus, the defense applied to defeat the plaintiffs' claim. In light of our analysis and conclusion in parts I and II A of this opinion, however, it is unnecessary for us to reach the merits of this additional argument.

[12] The defendant testified that, during the time that she kept chickens on the property, she kept a rooster and a hen on her property, in the garage, at 59 Mill Stream Road.

[13] We note that the court also observed that "[t]he defendant testified that she . . . does not have any plans to return [the chickens] to her property at 59 Mill Stream Road." Our review of the defendant's testimony does not support this observation.